**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellant,

v.

PAUL MICHAEL SAWYER, also
known as Motor Mike, also known as
Mike Paul Sawyer,

      Defendant-Appellee.

No. 05-5002

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 03-CR-145-H)**

---

Richard A. Friedman, Assistant United States Attorney, Washington, D.C. (David
C. O'Meilia, United States Attorney, and Leena Alam, Assistant United States
Attorney, with him on the briefs, Tulsa, Oklahoma) for Plaintiff-Appellant.

Stanley D. Monroe, Tulsa, Oklahoma, for Defendant-Appellee.

---

Before **PORFILIO** and **EBEL,** Circuit Judges, and **HERRERA**, District Judge.[*]

---

**HERRERA**, District Judge.

---

[*]Honorable Judith C. Herrera, United States District Judge for the District
of New Mexico, sitting by designation.

The Government appeals the district court's order granting Defendant Paul Michael Sawyer's ("Defendant") motion to suppress evidence. We exercise jurisdiction under 18 U.S.C. Section 3731 and reverse.

## I. Factual Background.

On August 17, 2000, Detectives Michael Todd Brown and Jack Cross of the Lawrence, Kansas Police Department (the "Kansas Officers") decided to pursue an investigation into a stolen motorcycle ring by traveling to Bartlesville, Oklahoma to interview Defendant Paul Michael Sawyer ("Defendant"). In preparation for their trip, the Kansas Officers attempted to telephone Sergeant Jay Hastings of the Bartlesville Police Department on August 17 and August 18, 2000. The Kansas Officers were unable to speak with Sergeant Hastings, but left a message for Hastings on August 18, 2000.

On August 18, 2000, the Kansas Officers departed for Bartlesville in attempt to locate and interview Defendant. Upon their arrival in Bartlesville, the Kansas Officers stopped first at the Bartlesville Police Department hoping to find a Bartlesville police officer to accompany them. No Bartlesville officers were available.

The Kansas Officers proceeded to Defendant's motorcycle shop, where Defendant conducted a business of motorcycle sales. When the officers knocked on the door of the business, no one answered. An individual at a nearby business

informed the Kansas Officers that Defendant was employed by Reda Pump. The Kansas Officers proceeded to Reda Pump, where they informed the manager, or person in charge, that they needed to speak with Defendant. Detective Brown was wearing his badge, firearm, handcuffs, phone, and pager on his belt. Detective Cross was wearing similar equipment on his belt. The Kansas Officers either presented their badges to the manager or their badges were visible to the manager during the conversation. The manager directed the Kansas Officers to a large conference room located on the business's premises, where the officers waited for Defendant. Thereafter, the manager brought Defendant to the conference room and left.

Detective Brown informed Defendant that he and Detective Cross were police officers from Lawrence, Kansas investigating crimes that had occurred in their jurisdiction. Detective Brown further indicated that Defendant was not under arrest and that he and Detective Cross did not have authority to arrest Defendant. Detective Brown also advised Defendant of his *Miranda* rights, using a blue card that the local district attorney's office had issued to the Lawrence, Kansas Police Department. Thereafter, Detective Brown asked Defendant if he would speak with them, and Defendant responded in the affirmative. The Kansas Officers conversed with Defendant for approximately one hour.

During the interview, Detective Brown asked Defendant to prepare a written statement, and Defendant agreed. The Kansas Officers provided Defendant with a Lawrence, Kansas Police Department form on which to write a statement. After Defendant finished writing the statement, Detective Brown asked whether Defendant would take him and Detective Cross to Defendant's motorcycle shop, and Defendant agreed.

The Kansas Officers, driving their police vehicle, followed Defendant, who was driving his own vehicle, to the shop. Upon their arrival, Defendant unlocked the door and allowed the Kansas Officers to enter. Once inside, the Kansas Officers requested that Defendant consent to a search of the premises by completing and signing an official Lawrence, Kansas Police Department consent form. The Kansas Officers explained that they wanted to formalize Defendant's consent to search so that they could have it for their records. Defendant signed the form.

The Kansas Officers began to search the motorcycle shop, and when they were concluding their search, the officers contacted the Bartlesville Police Department to request that a Bartlesville officer bring a camera to the shop. Three Bartlesville officers arrived on the scene, took photographs, and at the request of the Kansas Officers, seized six engines. The Kansas Officers took Defendant's records from his office and subsequently proceeded to Defendant's

residence where they obtained additional records from Defendant's wife. Thereafter, the Kansas Officers further interviewed Defendant at the Bartlesville Police Department.

At some point between August 19, 2000, and August 23, 2000, the Kansas Officers notified the Bartlesville police officers of the results of their examination of the serial numbers on the engines that they had seized from Defendant's shop. The following day, the Bartlesville officers obtained a search warrant from an Oklahoma state court judge authorizing a second search of Defendant's shop, using the information obtained by the Kansas Officers from the first search as the basis for their warrant application. The warrant resulted in the seizure of seventeen additional motorcycle engines.

The Kansas Officers at all times were acting in furtherance of an investigation on behalf of the Lawrence, Kansas Police Department. The Kansas Officers did not at any time act, or purport to act, as private citizens or volunteers. Rather, at all times, the Kansas Officers represented themselves as acting on official business.

## II. Procedural Background.

On October 10, 2003, the Government indicted Defendant in the Northern District of Oklahoma, charging him with conspiracy to possess stolen property, which had traveled in interstate commerce, in violation of 18 U.S.C. Section 371,

and possession of motorcycle engines with altered or obliterated vehicle identification numbers, with the intent to sell such engines, in violation of 18 U.S.C. Section 2321. On November 14, 2003, Defendant filed a motion to suppress, arguing that the district court should suppress all evidence obtained from both searches of his motorcycle shop on the ground that the Kansas Officers lacked authority to conduct an investigation in Oklahoma and that his consent to search therefore was invalid.

After conducting evidentiary hearings on December 1, 2003, and December 4, 2003, the district court certified the following question to the Oklahoma Court of Criminal Appeals:

> Whether police officers from Lawrence, Kansas, who identified themselves as police officers to the owner of a building located in Bartlesville, Oklahoma, but informed the owner prior to requesting consent to search that they were from Kansas and without authority to arrest him, could legally conduct such a search in Oklahoma, and whether the fruits of the subsequent search are admissible in evidence, considering that both Oklahoma and Kansas have statutory prohibitions against police officers acting in their official capacities outside their respective jurisdictions?

On June 8, 2004, in a three-two decision, the Oklahoma Court of Criminal Appeals ruled that the Kansas Officers lacked authority to request consent to search Defendant's business. *United States v. Sawyer*, 92 P.3d 707, 709-10 (Ok. Ct. Crim. App. 2004), App. 181-82. The Oklahoma court ruled that the detectives

- 6 -

lawfully could be present and conduct an investigation in Oklahoma, but lawfully could not conduct a search or seizure. *Id.* at 710 n.3, App. 182. Because the Kansas Officers obtained Defendant's consent to search while representing themselves as officers on official business, the Oklahoma court held that Defendant's consent to search was invalid under state law. *Id.* at 710 & n.3, App. 182. The Oklahoma court stated that the fruits of that search should be suppressed under the Fourth Amendment. *Id.* at 710-11, App. 182-83.

After receiving the Oklahoma court's response to the certified question and conducting a further hearing for argument by counsel on August 13, 2004, the district court granted Defendant's motion to suppress. Although the court concluded during the hearings that Defendant's consent to search voluntarily was given, *see* 12/4/03 Tr. at 77-78, App. 139-40; *see also id.* at 65, 72, 79, App. 127, 134, 141; 2/4/04 Tr. at 13, App. 160; 8/13/04 Tr. at 28, App. 215, the district court nonetheless held that, "because the Kansas officers could not lawfully request consent[,] . . . the search in this case is constitutionally infirm" and "the fruits of that illegal search cannot be used as evidence in this case," *Sawyer*, No. 03-CR-145-H, slip. op. at 14, App. 236.

## III. Discussion.

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *per se*

unreasonable . . . subject to only a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations and internal quotation marks omitted). "It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* (citations omitted). Federal law governs the question whether consent is valid, even though the police actions are those of state police officers. *See United States v. Miller*, 452 F.2d 731, 733 (10th Cir. 1971) (citations omitted). Under federal law, consent is valid if it is "'freely and voluntarily given.'" *Schneckloth*, 412 U.S. at 222 (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The validity of consent to search requires a factual determination based upon the totality of the circumstances of whether the consent was "the product of an essentially free and unconstrained choice by [the] maker," *id.* at 225, or whether it was "the product of duress or coercion, express or implied," *id.* at 227.

The district court found that the consent secured by the Kansas Officers was voluntary and not the product of duress.[1] That finding is not challenged

_____

[1] Although the district court did not address the voluntariness of Defendant's consent in its written opinion, during the hearings on the motion to suppress, the court found that Defendant's consent met the voluntariness requirements of the Fourth Amendment. *See* 12/4/03 Tr. at 77-78, App. 139-40; *see also id.* at 65, 72, 79, App. 127, 134, 141; 2/4/04 Tr. at 13, App. 160; 8/13/04 Tr. at 28, App. 215. Because the record on this point is sufficiently clear, we need not remand this case for a written finding. *See United States v. King*, 222

(continued...)

here.[2] Rather, on appeal, the Government contends that the district court erred when it held that Defendant's consent to conduct the initial search of the premises of his business, although voluntary, was nonetheless invalid because the Kansas Officers were acting outside of their jurisdiction in violation of Oklahoma law.

"In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party." *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004) (citation and internal quotation marks omitted). We accept the district court's findings of fact unless they are clearly erroneous. *Id.* "The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo." *Id.* (citation and internal quotation marks omitted). We accept a state court's determination of state law as conclusive. *Nelson v. Warden of Kan. State Penitentiary*, 436 F.2d 961, 962 (10th Cir. 1971) (citations omitted).

_____

[1](...continued)
F.3d 1280, 1283 n.2 (10th Cir. 2000) (declining to remand where the record was "sufficiently detailed and developed"); *United States v. Soto*, 988 F.2d 1548, 1554-55 (10th Cir. 1993) (declining to remand despite lack of specific findings where the relevant facts were undisputed).

[2] Defendant does not cross-appeal the district court's decision, including the district court's finding of voluntariness or the court's failure to find that Defendant was seized or otherwise coerced. Accordingly, the voluntariness of the search, as well as the question whether Defendant was seized for purposes of the Fourth Amendment, are not before us for review. We therefore do not consider Defendant's arguments related to these issues. *See* Answer Br. at 16-17 (setting forth case law and argument regarding seizure and voluntariness).

The district court held that although the consent obtained from the Kansas Officers was voluntary under the Fourth Amendment, that consent nonetheless was invalid and constitutionally infirm because the Kansas Officers did not, as a threshold matter, have authority under Oklahoma law to request Defendant's consent. *Sawyer*, No. 03-CR-145-H, slip op. at 14, App. 236. The district court recognized that compliance with the Fourth Amendment is a question of federal, and not state, law and that "violation of state law does not render the search *per se* unreasonable" under the Fourth Amendment.[3] *Id.* at 9, App. 231. The district court explained, however, that "state law informs the question of whether the consent obtained by the Kansas officers, in violation of law, was valid," because "[i]f state law does not control the consequences of the unlawful behavior of the Kansas officers, the state of Oklahoma will have seen its laws disregarded by law enforcement officers that it did not authorize and that it cannot sanction." *Id.* at 11, App. 233. The district court concluded that the "Kansas officers could not lawfully request consent," and that the consent obtained therefore was invalid

---

[3] The Oklahoma Court of Criminal Appeals determined that the Kansas Officers lacked authority to request consent to search Defendant's business. *Sawyer*, 92 P.3d at 709-10, App. 181-82. Based upon the Oklahoma court's holding, the district court properly concluded that "[t]he act of the Kansas officers in requesting [Defendant's] consent to search was clearly contrary to Oklahoma law, and the consent to search given by [Defendant] is therefore invalid under Oklahoma law." *Sawyer*, No. 03-CR-145-H, slip. op. at 8, App. 230 (citations omitted).

under the Fourth Amendment. *Id.* at 11, 14, App. 233, 236. We review the district court's conclusion of law *de novo* and reverse.

The federal test for determining the validity of consent to search does not require a district court to consider whether a law enforcement officer has authority under state law to request consent. Rather, the federal test for determining the validity of consent to search requires a factual determination based upon the totality of the circumstances of whether the consent was the product of an "essentially free and unconstrained choice by [the] maker" or whether it was the product of "duress or coercion, express or implied." *Schneckloth*, 412 U.S. at 225, 227. Factors to consider within the federal totality of the circumstances test include physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. *See United States v. Pena*, 143 F.3d 1363, 1367 (10th Cir. 1998); *United States v. Rosborough*, 366 F.3d 1145, 1149 (10th Cir. 2004) (citation omitted). Whether an officer reads a defendant his *Miranda* rights, *see, e.g.*, *United States v. Dozal*, 173 F.3d 787, 796 (10th Cir. 1999), obtains consent pursuant to a claim of lawful authority, *see, e.g.*, *Bumper*, 391 U.S. at 548-49, or informs a defendant of his or her right to refuse consent, *Schneckloth*, 412 U.S. at 227, also are factors to consider in determining whether consent given was

voluntary under the totality of the circumstances. The federal totality of circumstances test does not require an analysis of the legal parameters of the Kansas Officers' jurisdictional authority under state law. *See, e.g.*, *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir. 1994) (the totality of the circumstances test is "*fact* specific"--*i.e.*, based upon on "'all the circumstances surrounding the encounter'") (emphasis added); *see also Schneckloth*, 412 U.S. at 233 (to determine whether consent is voluntary, a court must "analyz[e] all of the circumstances of an individual consent"). Accordingly, the district court erred in finding the consent, although voluntary under the Fourth Amendment, nonetheless invalid.

The district court erroneously relied upon our holding in *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157 (10th Cir. 2003), in support of its decision. In *Marshall*, police officers conducted a blood test without obtaining a warrant. *Id.* at 1161. In a subsequent Section 1983 suit, the state argued, and the district court agreed, that probable cause and exigent circumstances rendered the blood test reasonable under the Fourth Amendment. *See id.* at 1171. The federal test for exigent circumstances asks in part whether a state assigns a high level of interest to the evidence the government seeks to admit. *Id.* at 1175 (citations omitted). Because the federal test requires us to consider state interests, we properly looked to New Mexico law as an indicator of state interests. We

concluded that because New Mexico law banned compulsory blood testing, with or without a warrant, in misdemeanor cases involving no physical injuries, the federal exigent circumstances exception did not logically apply. *Id.* at 1174, 1176, 1181. We therefore reversed the decision of the district court and held that the warrantless blood test violated the Fourth Amendment. *Id.*

In *Marshall*, because the federal exigent circumstances test requires a balancing of state interests and the New Mexico statute banned the compulsory blood testing at issue, state law was highly determinative of the federal question. The district court here, drawing a faulty analogy to *Marshall*, however, held that Oklahoma consent law is similarly determinative of the operation of the federal consent test. Specifically, the district court explained, in *Marshall* "the state had the authority to regulate what constituted exigency, although the operation of the exigent circumstances exception was measured by federal law." *Sawyer*, No. 03-CR-145-H, slip. op. at 12, App. 234; *see also id.* (quoting *Marshall*, 345 F.3d at 1175 ("'Our point is not that the Hobbs Defendants are subject to liability under § 1983 for violation of the New Mexico statute, but rather that the New Mexico statute determines whether . . . exigent circumstances . . . are present here.'")). From here, the district court reasoned that "in the instant case, the state has the authority to regulate the conduct of law enforcement officers, including the authority to prohibit them from securing consent to search when outside their

- 13 -

jurisdiction," even though the operation of the consent is determined by federal law.  *Id.* (citations omitted).

Unlike *Marshall*, this case does not involve an "exigent circumstances" analysis that requires a court to weigh a state's interest against the rights of an individual defendant.  *See, e.g.*, *Marshall*, 345 F.3d at 1175.  Instead, it involves a "consent" analysis that does not require an examination of state law or state interests.  The relevant consent inquiry is whether the consent was "unequivocal and specific and freely and intelligently given," or whether the police "coerce[d] the defendant into granting . . . consent."  *United States v. Pena-Sarabia*, 297 F.3d 983, 986 (10th Cir. 2002); *see also Schneckloth*, 412 U.S. at 225, 227.  The application of the validity of consent test requires us to examine such facts and circumstances as physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons within the totality of the circumstances.  *See, e.g.*, *Pena-Sarabia*, 297 F.3d at 987; *Rosborough*, 366 F.3d at 1149.  The application does not require us, as a threshold matter, to examine the officers' compliance with Oklahoma's law for obtaining valid consent, and therefore easily is distinguishable from the exigent circumstances test applied in *Marshall*.

For the same reason, Defendant's reliance upon *United States v. Ibarra*, 955 F.2d 1405 (10th Cir. 1992), is not persuasive. In *Ibarra*, we affirmed the district court's decision to grant a motion to suppress evidence seized during the search of a vehicle impounded in violation of state law. *Id.* at 1409. We considered state law in *Ibarra* because inventory searches involve a special incorporation of state law into Fourth Amendment jurisprudence. Specifically, an inventory search without probable cause of an impounded vehicle is lawful under the Fourth Amendment if the impoundment is pursuant to a state statute or administrative procedure that authorizes the impoundment and satisfies certain constitutional requisites. *See, e.g.*, *Florida v. Wells*, 495 U.S. 1, 4-5 (1990); *Colorado v. Bertine*, 479 U.S. 367, 371, 374 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 369-71, 376 (1976). In *Ibarra*, the state statute did not authorize impoundment of the vehicle, and therefore the search did not come within the inventory-search exception to the probable cause requirement. *Ibarra*, 955 F.2d at 1409. In contrast, the search in this case relies upon Defendant's consent, and the federal consent test does not depend upon state-law authorization.

Although state law or state interests are not highly determinative of the outcome of the federal injury here, as they were in *Marshall* or *Ibarra*, compliance with state law nonetheless may be relevant to the question whether Defendant's consent was valid under the Fourth Amendment. *Cf. United States v. Mikulski*,

317 F.3d 1228, 1232 (10th Cir. 2003) ("the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes") (citation and internal quotation marks omitted). We therefore must determine whether the Kansas Officers' actions in contravention of state law amounted to a federal violation.

The undisputed record indicates that Detective Brown informed Defendant that he was not under arrest and that Detectives Brown and Cross did not have authority to arrest him. Detective Brown further advised Defendant of his *Miranda* rights. Detective Brown asked for and received permission to speak with Defendant, asked for and received a written statement from Defendant, and asked for and received written permission to search Defendant's motorcycle shop. The Kansas Officers did not escort Defendant in their police vehicle to Defendant's motorcycle shop, but rather entered their own vehicle and followed Defendant, who drove his own vehicle, to the shop. There is no evidence in the record that the Kansas Officers, during any portion of their encounter with Defendant, used physical touching, violence, threats, promises, inducements, deception, trickery or an aggressive tone, or that Defendant's physical or mental condition rendered him unable to consent knowingly and intelligently. There also is no indication in the record that Defendant granted consent in submission to a claim of lawful authority--*i.e.*, a claim by the Kansas Officers that they could search the premises

even without Defendant's consent. Moreover, the record indicates that the Kansas Officers contacted the Bartlesville Police Department as they were concluding the search of the premises and that Bartlesville police officers thereafter were involved in the investigation. *Compare Mikulski*, 317 F.3d at 1233 (in deciding whether a state law violation amounts to a constitutional violation, noting that the officers acting extra-jurisdictionally contacted officers from the appropriate jurisdiction soon after the arrest at issue occurred). On these facts, with no evidence of coercion, we decline to hold that the state law jurisdictional violation rises to a constitutional level sufficient to render the consent invalid.

Our holdings in *United States v. Mikulski*, 317 F.3d 1228 (10th Cir. 2003), and *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990), which the district court relied upon in support of its decision,[4] do not persuade us otherwise. In *Ross v. Neff*, we held that an "arrest made outside the arresting officer's jurisdiction violates the Fourth Amendment." 905 F.2d at 1353-54. In *United States v. Mikulski*, we distinguished *Neff*, explaining that the extra-jurisdictional actions "'concerned the jurisdiction of officers acting between *political subdivisions of the same state.*'" 317 F.3d at 1232 (citations omitted). We concluded that a warrantless arrest outside of an officer's jurisdiction (but within the same state), did not rise to a

---

[4] Although the district court did not cite *Ross*, by relying upon our holding in *Mikulski*, the court relied upon our holding in *Ross* by implication.

constitutional violation even though it violated state law in part because the officers were acting between political subdivisions of the same state. *Id.* at 1233.

Referring to this distinction in support of its conclusion, the district court explained that "[t]he issue in this case is not limited to one of the 'jurisdiction of officers acting between *political subdivisions of the same state*.'" *Sawyer*, No. 03-CR-145-H, slip. op. at 11, App. 233 (citing *Mikulski*, 317 F.3d at 1232). Rather,

> the state law violation implicates a state's authority to control within its boundaries the behavior of law enforcement personnel from other states, where it has had no say in any initial licensing of personnel and where it will have no say in any subsequent discipline for wrongful conduct. A state's interest in controlling law enforcement personnel within its boundaries is very strong.

*Id.* (citations omitted). Although we agree that Oklahoma's interest in monitoring law enforcement personnel within its boundaries is strong, that interest is not sufficient to elevate this state law violation to a federal constitutional violation. The consent to search obtained here, with no evidence of coercion or duress, is vastly different from the warrantless arrest conducted in *Ross v. Neff. Compare United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999) ("[a] warrantless arrest is vastly different from a warranted search"). Accordingly, we decline to extend *Ross* to the facts of this case.

We also find unpersuasive the district court's argument that suppression is proper here because there was "no *independent* justification for the search" separate from the consent obtained in violation of state law. *Sawyer*, No. 03-CR-145-H, slip. op. at 13-14, App. 235-36. In support of this conclusion, the district court distinguishes our decisions in *United States v. Green* and *United States v. Mikulski*, reasoning that in those cases we did find a basis independent from the state law violation to deem the search in *Green* and seizure in *Mikulski* constitutional.

In *Green*, officers of the Wichita Police Department on two occasions searched Green's home in Butler County, Kansas, outside of the city limits of Wichita, pursuant to two valid search warrants--one from a Butler County judge and one from a United States Magistrate Judge. *See* 178 F.3d at 1101-03. We held that "even if th[e] officers [were] acting outside their jurisdiction as defined by state law," "there was no federal constitutional violation [because the] officers obtain[ed] a warrant, grounded in probable cause . . . , from a magistrate of the relevant jurisdiction authorizing them to search [the] particular location." *Id.* at 1106. The district court reasoned that in *Green*, the warrants obtained by a neutral judge "justified the searches independent of the officers' state law violation," and that by contrast, here, "there was no independent determination of probable cause

- 19 -

and no justification for the search independent of the state law violation." *Sawyer*, No. 03-CR-145-H, slip. op. at 13, App. 235.

Likewise, in *Mikulski*, the district court noted that an independent justification existed for the search, whereas here, the district court explained, "the unlawful acts of the Kansas officers created the relied-upon exception to the Fourth Amendment prohibition against unlawful search and seizure." *Id.* at 14, App. 236. In *Mikulski*, police officers acting outside of their jurisdiction conducted an arrest based upon illegal conduct that the officers observed. *See* 317 F.3d at 1229-30. The observation by the officers, the district court maintained, constituted a basis independent from the state law jurisdictional violation to justify the arrest. *Sawyer*, No. 03-CR-145-H, slip. op. at 13, App. 235. In contrast, the district court explained, here, the sole justification for the search--consent--was obtained in violation of state law. *Id.* at 14, App. 236.

We have never grafted an "independence" requirement onto our jurisprudence concerning state law violations and whether such violations amount to an infringement of federal constitutional rights. The touchstone of our jurisprudence remains whether the conduct in question contravenes the federal constitution. This inquiry does not, and has not, required a separate justification for police conduct "independent" from a state law violation. Such a requirement would render a state law violation conclusive of the federal question absent an

independent justification for police conduct. State law is not determinative of the federal question, but rather may or may not be relevant to the determination of the federal question. *See, e.g.*, *Mikulski*, 317 F.3d at 1232. Here, we have held that the state law violation, on the record before us with no evidence of coercion, does not rise to the level of a federal constitutional violation.

The remaining arguments in support of the district court's opinion set forth by Defendant likewise are not persuasive. Specifically, Defendant's reference to *Preston v. United States*, 376 U.S. 364 (1964), in which the Supreme Court held state officers to the same federal standard as federal officers in determining whether their actions violate federal constitutional rights, is not applicable here because Defendant seeks the reverse--*i.e.*, to evaluate federal constitutional rights by state standards. *Id.* at 366 (citation omitted). Likewise, Defendant's references to the full faith and credit and privileges and immunities clauses are not persuasive because Defendant has not demonstrated, and we do not find, that these clauses are relevant to the constitutionality of the consent obtained here. Finally, Defendant's reliance upon *Elkins v. United States*, 364 U.S. 206 (1960), does not have merit because *Elkins* simply stands for the proposition that federal courts must apply federal standards in determining the admissibility of evidence obtained by state law enforcement officers. *Id.* at 223-24.

## IV.    Conclusion.

Having carefully reviewed the briefs, the record, and the applicable law, we **REVERSE** the district court's order granting the motion to suppress and **REMAND** the action for further proceedings.[5]

---

[5] The Government also argues that we should reverse the district court's order granting the motion to suppress on the grounds that (1) the exclusionary rule does not apply to remedy a violation of a state law, and (2) the exclusionary rule does not apply because the Kansas Officers did not intrude upon an interest protected by the Fourth Amendment. Because we reverse on the ground that the consent obtained was valid under federal law, we need not reach these additional arguments on appeal.