**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

ENRIQUE VILLAGRANA-FLORES,
also known as Henry Villagran, also
known as Enrique Villagrano,

      Defendant - Appellant.

No. 05-4313

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:05-CR-297-DAK)**

Karin M. Fojtik, Assistant United States Attorney (and Stephen J. Sorenson,
Acting United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff -
Appellee.

Theordore R. Weckel, Salt Lake City, Utah, for Defendant - Appellant.

Before **KELLY**, **BEAM**,[*] and **HARTZ**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*]The Honorable C. Arlen Beam, Senior Circuit Judge, United States Court
of Appeals for the Eighth Circuit, sitting by designation.

Defendant-Appellant Enrique Villagrana-Flores appeals the denial of his motion to suppress identity evidence obtained during his detention by the St. George, Utah police on April 16, 2004. Mr. Villagrana-Flores pleaded guilty to one-count of illegal reentry in violation of 8 U.S.C. § 1326(a) and was sentenced to 77 months' imprisonment followed by 36 months' supervised release. Pursuant to Federal Rule of Criminal Procedure 11(a)(2), he reserved his right to appeal the denial of his suppression motion. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

At approximately 4:20 a.m., on April 16, 2004, the St. George police received a call from a patron at a Denny's restaurant indicating that "a man outside was trying to kill himself." The police responded, and the man was identified as Mr. Villagrana-Flores. Rather than arresting Mr. Villagrana-Flores, the police called an ambulance, which transported him to a local hospital for an emergency mental health evaluation. After the police indicated they were not going to arrest Mr. Villagrana-Flores, the hospital released him at approximately 6:10 a.m.

After his release, Mr. Villagrana-Flores, still wearing his hospital wristband, walked to a nearby public office building and situated himself in a stairwell. At approximately 7:00 a.m., a construction crew arrived at the building

and observed Mr. Villagrana-Flores in a delusional state. A witness, who was a member of the construction crew, claimed that Mr. Villagrana-Flores was talking to door knobs, had a dazed look on his face, and was disoriented. The witness called the police for Mr. Villagrana-Flores's and the construction crew's safety; however, the police did not respond at that time.

Three hours later, at approximately 10:00 a.m., another passerby called the police and notified them that Mr. Villagrana-Flores was mentally ill. This passerby also informed another individual on scene that, at the time the passerby called the police, Mr. Villagrana-Flores was hitting his head against the walls and windows of the office building.

Following this second call, an officer responded and arrived on scene at 10:11 a.m. At the time of the officer's arrival, Mr. Villagrana-Flores continued to exhibit delusional and paranoid behavior. The officer did not take Mr. Villagrana-Flores to the hospital but, rather, detained him. The officer's police report stated that he thought Mr. Villagrana-Flores was a danger to himself and possibly to others.

At approximately 10:18 a.m., the officer ran a warrants check on Mr. Villagrana-Flores and discovered that he had outstanding warrants and prior deportations and, as a result, the officer placed Mr. Villagrana-Flores under arrest. Mr. Villagrana-Flores was subsequently indicted for reentry by a previously removed alien. On appeal, Mr. Villagrana-Flores argues that: (1) the

St. George police violated his Fourth and Fourteenth Amendment rights because they ran a warrants check when he was exhibiting mentally ill behavior; (2) the government is judicially estopped from arguing there was no Fourth Amendment violation because it took a contrary position below; (3) the information police obtained as a result of the warrants check is fruit of the poisonous tree and attenuation principles will not save it; (4) his outstanding warrants and prior deportations would not have been inevitably discovered without the Fourth Amendment violation; and (5) the booking exception does not apply to his fingerprints in this case.

## Discussion

"When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous." United States v. Gregoire, 425 F.3d 872, 875 (10th Cir. 2005). On the other hand, "the ultimate determination of whether a search and seizure were reasonable under the Fourth Amendment is subject to de novo review." United States v. Garcia, 459 F.3d 1059, 1062 (10th Cir. 2006).

I.     Reasonableness of the Warrants Check

Mr. Villagrana-Flores first argues that his Fourth and Fourteenth Amendment rights were violated when the detaining officer ran a warrants check.

He contends that, at the time the warrants check occurred, he was the subject of a Terry stop for mental health reasons and that running a warrants check for criminal purposes is beyond the permissible scope of such a stop. See Terry v. Ohio, 392 U.S. 1 (1968). The government counters that the warrants check occurred after Mr. Villagrana-Flores had been arrested for criminal trespass and disorderly conduct and that a warrants check is permissible following a full-fledged arrest.

The Fourth Amendment is not confined to the criminal arena but applies whenever government authorities take an individual into custody against his will. Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir. 1996). In analyzing the various levels of Fourth Amendment protection, the Supreme Court has demarcated three types of police-citizen encounters: consensual encounters, investigative stops, and arrests. Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000).

Consensual encounters between police and citizens are not considered "seizures" within the meaning of the Fourth Amendment and consequently do not require any suspicion of criminal wrongdoing. United States v. Drayton, 536 U.S. 194, 200-01 (2002). Investigative Terry stops, are, however, "seizures" within the meaning of the Fourth Amendment; accordingly, a law enforcement officer, based on the totality of the circumstances, "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). Finally, actual arrests,

which are characterized by a "highly intrusive or lengthy search or detention," United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004), require that a reasonable officer would have probable cause to believe the arrestee has committed a crime, Tennessee v. Garner, 471 U.S. 1, 7 (1985). Probable cause arises when there exist "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Mr. Villagrana-Flores disputes the legality of his detention for criminal purposes and the officer's performance of a warrants check during the detention. On the government's motion and over the objection of the defendant, the district court resolved the motion to suppress without an evidentiary hearing. It accepted Mr. Villagrana-Flores's version of the facts and nonetheless determined that no Fourth Amendment violation had occurred.

We need to address two preliminary matters about the record. Although Mr. Villagrana-Flores argues otherwise, even accepting Mr. Villagrana-Flores's version of the facts, it is apparent that one reason he was arrested was for criminal purposes. In his motion to suppress, Mr. Villagrana-Flores argued that it was unreasonable for the officer to detain him for criminal trespass or disorderly conduct because of his delusional and paranoid mental state. I R. Doc. 24 at 5-6.

On appeal, Mr. Villagrana-Flores argues that it was unreasonable for the arresting officer to infer that he was acting criminally. Aplt. Br. at 10. Merely because an individual can be detained for mental health reasons, however, does not rule out the possibility that the same individual can alternatively be detained for committing crime. Under the Fourth Amendment, the inquiry is objective, see Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary . . . Fourth Amendment analysis."), and thus the actual reasons for the officer's detention of Mr. Villagrana-Flores are of no consequence. All that is required is "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18. Here, as discussed more fully below, the officer had an objectively reasonable suspicion that Mr. Villagrana-Flores was engaged in criminal activity.

Mr. Villagrana-Flores points out that the arresting officer's report states that he took Mr. Villagrana-Flores into custody because he was a danger to himself and/or others and that this language closely approximates the language found in Utah's civil commitment statute. See Utah Code Ann. § 62A-15-629(2) (2006) (allowing an adult to be temporarily, involuntarily committed if "because of [an] apparent mental illness and conduct, there is a substantial likelihood of serious harm to that person or others . . . ."). That same language, however, is also indicative of a detention for criminal trespass and disorderly conduct. See Utah Code Ann. § 76-6-206(2) (2006) ("A person is guilty of criminal trespass if .

- 7 -

. . (a) he enters or remains lawfully on property and . . . (iii) is reckless as to whether his presence will cause fear for the safety of another.") (emphasis added); Utah Code Ann. § 76-9-102(1) (2006) ("A person is guilty of disorderly conduct if . . . (b) intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he . . . (i) engages . . . in threatening behavior.") (emphasis added).

Mr. Villagrana-Flores also maintains that the warrants check occurred before he was arrested and during a Terry stop. The district court's ruling, however, assumed that the warrants check occurred after Mr. Villagrana-Flores was placed under arrest. Though we understand how the district court could have assumed, based on Mr. Villagrana-Flores's version of the facts, that the warrants check occurred after he was arrested, we will assume that the warrants check occurred before Mr. Villagrana-Flores was placed under arrest as no evidentiary hearing was held to resolve the issue. As we will discuss more fully below, however, this assumption does not affect the ultimate legality of the warrants check.[1]

Having resolved these two preliminary matters, we are left with the following question: Is it a violation of the Fourth Amendment for an officer who

---

[1] Remand therefore is unnecessary as it would not affect the outcome. See United States v. Higgins, 282 F.3d 1261, 1268 (10th Cir. 2002) ("[C]ounsel should at least show that there would be a point in a remand, that is, that there is some basis . . . on which the search could be held illegal.").

performs a Terry stop on an individual suspected of committing a crime to obtain that individual's identity and perform a warrants check? We hold it is not.

A Terry stop, considering the totality of the circumstances, requires "a reasonable and articulable suspicion that the person seized is engaged in criminal activity." United States v. Davis, 94 F.3d 1465, 1468 (10th Cir. 1996). In Terry itself, the Supreme Court noted that the primary considerations bearing upon the reasonableness of a search and seizure are "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 19-20. In applying these considerations, the Supreme Court has previously deemed Terry stops unconstitutional when they continue for an excessive period of time, see United States v. Place, 462 U.S. 696, 709 (1983), or resemble traditional arrests, see Dunaway v. New York, 442 U.S. 200, 212 (1979).

The Supreme Court has also stated several useful principles regarding the government's ability to obtain a citizen's identity during a Terry stop. The Court has made clear, for example, that a police officer may ask an individual to volunteer his identity without implicating the Fourth Amendment. INS v. Delgado, 466 U.S. 210, 216 (1984). If, however, the request for identification comes after an officer stops an individual for investigative purposes, the Fourth Amendment requires the initial stop to have been based on reasonable suspicion. Brown v. Texas, 443 U.S. 47, 51-52 (1979). If the officer possesses reasonable

suspicion, thereby justifying the initial stop, "it is well established that [the] officer may ask a suspect to identify himself in the course of a Terry stop . . . ." Hiibel v. Sixth Judicial Dist. Ct. of Nev., 542 U.S. 177, 186 (2004). This stems from the fact that:

> Obtaining a suspect's name in the course of a Terry stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

Id.

Thus, in analyzing Mr. Villagrana-Flores's claim that the warrants check violated his Fourth Amendment rights, we must first inquire whether the officer's initial detention was based on reasonable suspicion.[2] We will, therefore, ask whether the officer had "a particularized and objective basis for suspecting [Mr. Villagrana-Flores] of criminal activity." See Cortez, 449 U.S. at 417-18. At the time he arrived on scene, the officer knew that Mr. Villagrana-Flores had situated

_____

[2] While Mr. Villagrana-Flores does not dispute that the officer had probable cause to detain him for mental health reasons, he does deny that the officer had probable cause to detain him for committing a crime. See Aplt. Br. at 7-8 ("[I]n his pleadings, Mr. Villagrana-Flores had also argued that there was no probable cause to believe that he had committed either of the crimes for which he was charged."). As previously indicated, however, we assume the warrants check occurred during the course of a Terry stop, and therefore, the officer did not need probable cause—only reasonable suspicion—to detain Mr. Villagrana-Flores. Nonetheless, we construe Mr. Villagrana-Flores's probable cause argument as an argument that the officer did not possess the requisite level of suspicion at the time of the warrants check, and thus we address whether the officer possessed reasonable suspicion.

himself in the stairwell of an office building. The officer had also received reports that Mr. Villagrana-Flores was delusional and hitting his head against the walls and windows of the office building. Moreover, a witness had previously called the police because Mr. Villagrana-Flores's odd behavior had made the witness fear for his and his crew's safety. In Utah, one is guilty of criminal trespass if he enters or remains unlawfully on property and is reckless as to whether his presence will cause fear for the safety of another. Utah Code Ann. § 76-6-206(2)(a)(iii). Mr. Villagrana-Flores's presence in the stairwell, combined with citizens' reports regarding his strange behavior, was sufficient to provide the officer with objectively reasonable grounds to believe that Mr. Villagrana-Flores was in violation of the Utah criminal trespass statute at the time he was detained for investigative purposes.[3] Cf. United States v. Garner, 416 F.3d 1208, 1214 (10th Cir. 2005) (finding that an officer had reasonable suspicion that the defendant was in violation of Utah's public intoxication statute based on citizen reports of an unconscious man in a field combined with the defendant's presence in the field); see also United States v. Rojas-Millan, 234 F.3d 464, 469 (9th Cir. 2000) (analyzing a state statutory provision and concluding that the officer's reasonable suspicion was objectively grounded in the law). And because the

---

[3] Because we find that the officer had reasonable suspicion to detain Mr. Villagrana-Flores based on the Utah criminal trespass statute, we need not determine whether the officer had reasonable suspicion to detain him under the Utah disorderly conduct statute or any other Utah statute.

officer possessed reasonable suspicion to conduct the initial stop, he was also justified in obtaining Mr. Villagrana-Flores's identity. See Hayes v. Florida, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, . . . or to . . . obtain additional information.").

The next question then is whether the officer was justified in using Mr. Villagrana-Flores's identity to run a warrants check during the course of the Terry stop. In other words, we must determine whether running the warrants check was "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20-21. We have previously held, in the context of traffic stops based on reasonable suspicion alone, that a "motorist may be detained for a short period while the officer runs a background check to see if there are any outstanding warrants or criminal history pertaining to the motorist even though the purpose of the stop had nothing to do with such prior criminal history." United States v. Holt, 264 F.3d 1215, 1221 (10th Cir. 2001) (en banc). Several of our sister circuits have similarly held. See United States v. Brigham, 382 F.3d 500, 507-08, 507-08 n.5 (5th Cir. 2004) (en banc) (holding similarly and collecting cases). We explained in Holt that "[t]he justification for detaining a motorist to obtain a criminal history check is, in part, officer safety" because "[b]y determining whether a detained motorist has a criminal record or outstanding warrants, an officer will be better apprized of whether the detained

motorist might engage in violent activity during the stop." 264 F.3d at 1221-22.

As long as the detention is for a short period, "the government's strong interest in officer safety outweighs the motorist's interests." Id. at 1221.

Officer safety, however, is just as strongly implicated where the individual being detained for a short period of time is on foot, rather than in an automobile. An officer detaining a pedestrian has an equally strong interest in knowing whether that individual has a violent past or is currently wanted on outstanding warrants. The citizen's interest, on the other hand, is no more robust merely because a short detention occurs while traversing on foot. Moreover, permitting a warrants check during a Terry stop on the street also "promotes the strong government interest in solving crimes and bringing offenders to justice." See United States v. Hensley, 469 U.S. 221, 229 (1985). Indeed, an identity's utility in "inform[ing] an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder," Hiibel, 542 U.S. at 186, would be non-existent without the ability to use the identity to run a criminal background check. Thus, we hold that Mr. Villagrana-Flores's Fourth Amendment rights were neither violated when his identity was obtained during a valid Terry stop nor when his identity was shortly thereafter used to run a warrants check.[4]

---

[4] Because of the posture of this case, we analyze it as the parties have presented it. We do, however, note that the Fourth Amendment is not implicated simply because a name, legally obtained, is later used to run a criminal background check. That action is neither a search nor a seizure, for there is no legitimate expectation of privacy in one's criminal history. See Nilson v. Layton

In arguing that the warrants check was unreasonable, Mr. Villagrana-Flores maintains that, in light of his delusional behavior, the detaining officer violated federal and state law in failing to take him to a designated mental health facility. Mr. Villagrana-Flores specifically points to Pino v. Higgs, 75 F.3d 1461 (10th Cir. 1996), for the proposition that the detaining officer's failure to take him to a mental health facility violated federal law. That case, however, discussed the circumstances under which an officer is permitted to take a citizen into custody for mental health purposes. See id. at 1468 ("Officers Higgs and Faust had the authority to detain and transport a person for [an] emergency mental health evaluation once they had reasonable grounds to believe that the person, as a result of mental illness, presents a serious likelihood of harm to [her]self or others and that immediate detention is necessary to prevent such harm.") (emphasis added) (internal quotation marks omitted). We do not read Pino as promulgating a federal obligation on the part of local police to transport citizens to a designated mental health facility whenever they exhibit delusional behavior.

Mr. Villagrana-Flores also contends that the officer's failure to transport him to a mental health facility violated Utah's civil commitment statute. Even assuming, without deciding, that the officer did violate state law, that violation

City, 45 F.3d 369, 372 (10th Cir. 1995) ("Expectations of privacy are legitimate if the information which the state possesses is highly personal or intimate. . . . [G]overnment disclosures of arrest records, judicial proceedings, and information contained in police reports do not implicate the right to privacy." (internal citations omitted)).

would be irrelevant to the question of whether the warrants check violated Mr. Villagrana-Flores's Fourth Amendment rights. See United States v. Green, 178 F.3d 1099, 1105 (10th Cir. 1999) ("[T]he fact that the arrest, search, or seizure may have violated state law is irrelevant [to whether evidence should be suppressed] as long as the standards developed under the Federal Constitution were not offended.") (internal quotation marks omitted).

Finally, Mr. Villagrana-Flores relies on Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584 (10th Cir. 1999), and Fisher v. Harden, 398 F.3d 837 (6th Cir. 2005), for the proposition that "in the context of a Terry stop for mental illness, it is clear that a police officer's activities must be related to the basis for his initial inquiry." Aplt. Br. at 12-13. Both Anaya and Fisher discussed limitations on police behavior when detaining a citizen for mental health reasons. See Fisher, 398 F.3d at 846 ("The specific question at issue is whether it was clearly established . . . that a law enforcement officer may not affect a mental health seizure without probable cause."); Anaya 195 F.3d at 591 ("[T]o justify seizure for intoxication by alcohol, an officer must have probable cause to believe an intoxicated person is a danger to himself or others."). Given our holdings that Mr. Villagrana-Flores was validly stopped for criminal purposes and that the warrants check was reasonably related to that criminal stop, both Anaya and

Fisher are inapposite.[5]

## II. Judicial Estoppel

By way of supplemental authority, Mr. Villagrana-Flores also claims that the government should be judicially estopped from arguing there was no Fourth Amendment violation. He asserts that at one point during the district court proceedings the government took the position that there was a Fourth Amendment violation and that the government should not thereafter be permitted to take the opposite stance. Mr. Villagrana-Flores's argument, however, is unavailing.

The doctrine of judicial estoppel states that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." Davis v. Wakelee, 156 U.S. 680, 689 (1895). While judicial estoppel is "'probably not reducible to any general formulation of principle,'" New Hampshire v. Maine, 532 U.S. 742, 750 (2001), the following factors are crucial in deciding when to apply the doctrine:

> First, a party's later position must be clearly inconsistent with its earlier position. Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. Second, whether the party has succeeded in persuading a court to accept that

---

[5] As a result of our holding that there was no Fourth Amendment violation in this case, we need not address the district court's alternative holdings regarding attenuation, inevitable discovery, the suppression of identity, or the booking exception.

party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . Third, whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

Johnson v. Lindon City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005) (internal citations and quotation marks omitted).

The instant case clearly fails to satisfy the three-part test. First, we are not convinced that the government's current position—that no Fourth Amendment violation occurred—is clearly inconsistent with any earlier position. At one point in its response to Mr. Villagrana-Flores's motion to suppress, the government simply stated that "for purposes [of] resolution of the issues surrounding the suppression of identity, the United States must assume a Fourth Amendment violation occurred." I R. Doc. 37 at 2. Assuming that a Fourth Amendment violation occurred for the purpose of resolving a specific issue is not the same as flatly admitting that such a violation occurred for all purposes. Even if we were to agree that the government took two clearly conflicting positions, which we do not, the existence of a Fourth Amendment violation is a legal position, not a factual one, and therefore the first judicial estoppel factor has not been satisfied. The second factor has similarly not been satisfied because the district court was never persuaded that a Fourth Amendment violation occurred; in fact, it held otherwise. Finally, the government's allegedly conflicting positions in no way

- 17 -

prejudiced Mr. Villagrana-Flores, as demonstrated by his full briefing of the Fourth Amendment issue at the district court and on appeal.

AFFIRMED.

05-4313 - *United States v. Villagrana-Flores*

**HARTZ**, Circuit Judge concurring:


I concur in the judgment and Part II of Judge Kelly's opinion. I find it unnecessary, however, to address most of the matters discussed in Part I.

Although it was not totally clear from the briefs on appeal, counsel for Mr. Villagrana-Flores stated unequivocally at oral argument that he was not challenging the legality of Mr. Villagrana-Flores's detention. His claim was solely that it was improper for the officers to conduct a records check of his criminal record when the purpose of his detention was mental illness. Given that clarification, we can easily dispose of this appeal. Even assuming that Mr. Villagrana-Flores was not detained for a criminal violation, the records check did not infringe his Fourth Amendment rights. He has no Fourth Amendment interest in the public records that were reviewed in the records check. *See Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). Nor does he claim that his detention was unlawfully prolonged while the officers requested the records check and awaited the results (he concedes that the detention itself was lawful). *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258-59 (10th Cir. 2006). In short, the records check involved no intrusion on his Fourth Amendment rights.