**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

YAUDIS VENZANT-DIAZ,

      Defendant-Appellant.

No. 06-2109
(D.C. No. CR 04-2250 MCA)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

---

      Yaudis Venzant-Diaz pleaded guilty to one count of possession of cocaine base with intent to distribute and one count of using or carrying a firearm in relation to a drug crime, pursuant to a conditional plea agreement that preserved his right to appeal an adverse ruling on a suppression motion. We find no clear error in the district court's factual finding that Mr. Venzant-Diaz consented to the challenged search, and we affirm.

---

    [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

On October 22, 2004, a confidential informant tipped off Officer Michael Werner of the Albuquerque Police Department ("APD") that Mr. Venzant-Diaz was dealing crack cocaine from his home and that he had hidden both narcotics and a stolen firearm there. Based on this information, Officer Werner, accompanied by fellow Officers Tank Guenther and Elder Guevarra, went to the home of Mr. Venzant-Diaz to conduct a warrantless "knock-and-talk" in an attempt to obtain Mr. Venzant-Diaz's consent to a search of the house.

According to the officers, they told Mr. Venzant-Diaz of their suspicions and asked his permission to enter and search. He responded by inviting the officers to "come on in and look." Asked more specifically if the officers could search for the stolen firearm in the kitchen stove, where the confidential informant said it could be found, Mr. Venzant-Diaz again consented explicitly: "Go ahead. Look in the stove. You're not going to find anything."

Mr. Venzant-Diaz disputes this account of the search, and he contends that he never gave the officers his consent to enter his home or search the premises. According to Mr. Venzant-Diaz, the officers entered as soon as he opened the door, neither asking for nor receiving his permission to enter. Further, Mr. Venzant-Diaz testified he "never at any time told them that they could look around," and that the officers never asked him whether they could search his

home.  Mr. Venzant-Diaz claims he did not actively oppose the officers' entry, however, because he feared they would physically assault him.[2]

The parties do not dispute that the search of Mr. Venzant-Diaz's home yielded a Glock pistol, hidden in a disguised compartment on the oven door.  A check of the gun's serial number in the NCIC database showed that it had previously been reported stolen.  Mr. Venzant-Diaz was informed of his Miranda rights, handcuffed, and transported to the police station.  Under questioning by Officer Guevarra at the station, Mr. Venzant-Diaz admitted to selling both methamphetamine and crack cocaine and to purchasing the Glock from a customer for self-protection.  Officer Werner, meanwhile, obtained a search warrant for Mr. Venzant-Diaz's home, later executed it with Mr. Venzant-Diaz present, and

---

[2]Mr. Venzant-Diaz's claimed fear apparently stemmed from an incident on October 16, 2004, in which Mr. Venzant-Diaz's car was stopped and he was arrested on suspicion of possessing methamphetamines and for resisting arrest. Officer Werner was the supervising officer at the scene, and he testified that "there had been some use of force" against Mr. Venzant-Diaz by the arresting officer.  According to Mr. Venzant-Diaz, the officers who stopped him, including Officer Werner, handcuffed him and then beat and threatened him.  Officer Werner testified that he did not believe any beating occurred and that he believed Mr. Venzant-Diaz's injuries were sustained pursuant to officers' use of force necessary to take Mr. Venzant-Diaz into custody.  It is undisputed that Mr. Venzant-Diaz was transported from the scene via ambulance to a hospital, where he was treated for a laceration on his face, held overnight, and then released.
In the district court, Mr. Venzant-Diaz sought dismissal of the charges against him based upon these allegations, which he contended amounted to outrageous governmental misconduct.  The district court denied the motion, and Mr. Venzant-Diaz does not appeal this decision.  Accordingly, the only issue before this court is whether the district court erred in determining Mr. Venzant-Diaz consented to the search of his home, which does not require us to determine the truth of Mr. Venzant-Diaz's allegation that he was beaten by APD officers.

- 3 -

discovered an amount of crack cocaine, packaged for retail distribution, in the hollowed-out legs of Mr. Venzant-Diaz's kitchen table. Mr. Venzant-Diaz was subsequently indicted on one count of unlawfully and knowingly possessing a firearm subsequent to a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) ("Count I"); one count of possession with intent to distribute more than 5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a) and (b)(1)(B) ("Count II"); and one count of knowingly carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count III").

Mr. Venzant-Diaz moved to suppress both the physical evidence against him and the statements he made in interrogation, arguing they were the result of an unconsented, warrantless search in violation of the Fourth Amendment. The district court held a hearing on the suppression motion at which Mr. Venzant-Diaz and all three officers testified. At the conclusion of the hearing, the district court found the testimony of the officers credible, but it found Mr. Venzant-Diaz's testimony credible only "when he told us his name and when he told us he paid $60 for the Glock. Other than that, I totally disregard his testimony as being basically incred[ible]." The district court noted that Mr. Venzant-Diaz's allegation of the earlier beating "causes me trouble, but not in the sense of the consent in this case." The court found that the officers did not need a search warrant, as Mr. Venzant-Diaz "invited them in." Accordingly, the district court denied the motion to suppress.

Subsequently, Mr. Venzant-Diaz pleaded guilty to Counts II and III of the indictment against him, pursuant to a conditional plea agreement which preserved his right to appeal the district court's denial of his motion to suppress and his motion to dismiss the indictment. He filed a timely notice of appeal, and we have jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

"When reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government, accepting the district court's factual findings unless clearly erroneous." United States v. Villagrana-Flores, 467 F.3d 1269, 1273 (10th Cir. 2006) (quoting United States v. Gregoire, 425 F.3d 872, 875 (10th Cir. 2005)). The scope of consent, and whether it was exceeded under the circumstances of the challenged search, are questions of fact. United States v. Rosborough, 366 F.3d 1145, 1150 (10th Cir. 2004). And "[t]he validity of consent to search requires a factual determination based upon the totality of the circumstances of whether the consent was 'the product of an essentially free and unconstrained choice by [the] maker' or whether it was 'the product of duress or coercion, express or implied.'" United States v. Sawyer, 441 F.3d 890, 894 (10th Cir. 2006) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 227 (1973); internal citations omitted). Accordingly, we review a district court's determinations whether consent was given, what its scope was, and whether it was given voluntarily, for clear error. See United States v. Zubia-

Melendez, 263 F.3d 1155, 1162 (10th Cir. 2001). "The witnesses['] credibility and the weight to be given evidence, together with all inferences and conclusions drawn from the evidence, are matters within the province of the district judge." United States v. Stephenson, 452 F.3d 1173, 1176 (10th Cir. 2006).

Before this court, Mr. Venzant-Diaz raises three challenges to the district court's denial of his motion to suppress. First, he argues that the district court improperly equated Mr. Venzant-Diaz's consent to the officers' entry into his home with a consent to search. Second, he contends the district court's findings on the credibility of witness testimony at the suppression hearing were inconsistent with its order to investigate further Mr. Venzant-Diaz's allegations he had been beaten at his October 16, 2004, arrest. Third, he argues the Government failed to carry its burden of demonstrating Mr. Venzant-Diaz's consent to entry and search was voluntary, even accepting the officers' testimony. For none of the three claims, however, does Mr. Venzant-Diaz provide evidence which leaves us "with the definite and firm conviction that a mistake has been committed." United States v. Wilfong, 475 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted).

Mr. Venzant-Diaz's first contention, that the district court found only consent to enter his home, not consent to search, is directly belied by the witness testimony and the credibility determination made by Judge Conway at the suppression hearing. As Officer Werner testified, he specifically asked Mr.

Venzant-Diaz for permission to search the kitchen stove for a gun; according to the officer's testimony, Mr. Venzant-Diaz replied, "Go ahead. Look in the stove. You're not going to find anything." The district court stated that it believed Officer Werner's testimony about the circumstances of the search and disbelieved Mr. Venzant-Diaz's testimony to the contrary. Mr. Venzant-Diaz provides no evidence other than his testimony to suggest the district court erred in its determination, and we will not set aside a factual finding of consent to search based on Mr. Venzant-Diaz's bare assertion that the district court incorrectly found the officers credible.

Mr. Venzant-Diaz next argues that the district court's factual findings are "internally inconsistent" and that its "admonishment to counsel to further investigate the alleged beating of Mr. Venzant-Diaz on October 16, 2004, [flew] in the face of the witness credibility findings it had just announced." According to this theory, because the district court apparently found some potential for truth in Mr. Venzant-Diaz's allegation that he had been beaten, it "erred by failing to analyze the voluntariness of Mr. Venzant-Diaz's consent in light of these circumstances." We disagree. There is no inherent inconsistency between the district court's factual finding that consent was voluntarily given and the court's apparent concern with the actual facts underlying Mr. Venzant-Diaz's allegation of a beating at the hands of APD officers. Indeed, it would have been entirely consistent for the court to find that Mr. Venzant-Diaz had been beaten on October

- 7 -

16, 2004, and yet he voluntarily offered his consent to the officers' search a week later. It is the province of the district court to weigh the credibility of witnesses, and on the evidence presented on appeal we do not conclude that its weighing was clearly erroneous.

Finally, Mr. Venzant-Diaz argues that, even accepting the officers' testimony, the totality of the circumstances of the search indicates his consent was involuntary, contrary to the district court's determination. He points to the presence in his home of three uniformed and armed police officers, the absence of other civilians in the home, the prior use of force in response to his resisting arrest on October 16, 2004, and his physically vulnerable condition while he recovered from the injuries he sustained in that incident, as factors weighing in favor of a finding that his consent was coerced. We find nothing, however, that would permit us to label the district court's conclusion of voluntariness to be clear error. There was no testimony that the officers at any point drew their weapons, made threats, or employed any force whatsoever against Mr. Venzant-Diaz. See United States v. Cruz-Mendez, 467 F.3d 1260, 1265-66 (10th Cir. 2006) (finding the courteous interaction of several armed officers with an inhabitant did not render consent to search coerced); United States v. Ledesma, 447 F.3d 1307, 1314 (10th Cir. 2006) (collecting factors bearing on the determination of voluntariness, none of which is dispositive). And whatever conclusion we may have drawn from the evidence presented at the suppression

hearing ab initio, there simply is no basis for overturning the factual determination of voluntariness under these circumstances.

## III. CONCLUSION

The district court's factual determinations — that Mr. Venzant-Diaz consented to the officers' entry into his home and to their search of his kitchen stove, and that his consent was voluntarily given and not the product of duress or coercion — are not clearly erroneous. Accordingly, we AFFIRM the district court's denial of Mr. Venzant-Diaz's motion to suppress his statements and the physical evidence procured as a result of the consented search and through the subsequently obtained warrant.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge