FILED
United States Court of Appeals
Tenth Circuit

August 4, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES,

        Plaintiff - Appellee,

    v.

GEORGE JASON GONZALES,

        Defendant - Appellant.

No. 06-1398

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 05-cr-00144-WYD)**

---

Madeline S. Cohen, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender for the District of Colorado, Denver, Colorado, appearing for Appellant.

John M. Hutchins, Assistant United States Attorney (Troy A. Eid, United States Attorney, Philip Brimmer, and Habib Nasrullah, Assistant United States Attorneys, with him on the brief), Office of the United States Attorney for the District of Colorado, Denver, Colorado, appearing for Appellee.

---

Before **TACHA**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

---

    A jury convicted Defendant-Appellant George Jason Gonzales of one count

of possessing an unregistered firearm, *see* 26 U.S.C. § 5861(d), one count of

being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and one count of illegal possession of ammunition, *see id.* Mr. Gonzales now appeals his convictions on multiple grounds. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I. BACKGROUND

On January 8, 2005, Officer Ricardo Hernandez, a Mountain View, Colorado police officer, pulled over a silver Mercedes for speeding. Before exiting his vehicle, Officer Hernandez wrote down the Mercedes's license plate number. When he approached the vehicle, the reverse lights illuminated and the car began to back up. As the Mercedes veered in his direction, Officer Hernandez reached for his gun and instructed the driver to stop. Officer Hernandez was also holding a flashlight in his left hand, and as the Mercedes approached, he broke out the rear driver's side window with the flashlight. When he hit the window, the flashlight slipped out of his hand and into the vehicle. The Mercedes then turned around and headed in the opposite direction, at which point Officer Hernandez observed only one male occupant in the vehicle.

Officer Hernandez notified dispatch that he was in pursuit and followed the Mercedes as it crossed into Denver, Colorado. He eventually lost sight of the vehicle, but dispatch notified him that a Mercedes was seen on a nearby street. When Officer Hernandez arrived at the location, where two police units were already on the scene, he saw that the front end of the car was damaged from a

collision and the driver had abandoned the vehicle. Officer Hernandez knew it was the same vehicle because he recognized the broken window and found his flashlight on the floorboard. He also discovered a shotgun and a rubber mask attached to a baseball cap within reach of the driver's seat. Officer Hernandez and Officer Starbuck, a Denver police officer, believed the shotgun had been sawed off. Testimony at trial indicated that the shotgun barrel had an actual length of thirteen-and-three-quarters inches.

One of the original officers on the scene found a Colorado identification card belonging to Mr. Gonzales in the vehicle. Officer Hernandez looked at the card and recognized the person in the photograph as the driver of the Mercedes. Officer Starbuck ran the license plate of the Mercedes and discovered that the car was registered to two individuals: Vincent Gonzales, who is deceased, and Mr. Gonzales.

A few months later, on March 12, 2005, six police officers from Westminster, Colorado were conducting an undercover homicide investigation unrelated to the incident involving the Mercedes on January 8. The Westminster officers were parked outside a residence in Thornton, Colorado (a neighboring jurisdiction), monitoring a red truck in conjunction with the homicide investigation. At trial, a Westminster officer testified that, consistent with police department protocol, they had contacted the Thornton Police Department ahead of time to inform them that Westminster officers would be conducting an undercover

investigation in Thornton.

When the red truck left the residence, the officers were unable to determine the driver's identity. The officers followed it for several miles in Thornton before they observed the driver turn without using a signal. The officers notified Thornton officers of the license plate and location of the vehicle and proceeded to make a traffic stop based on the truck's failure to signal.

After the truck pulled over and before the officers had a chance to exit their vehicles, Mr. Gonzales jumped out of the truck. After he was out of the vehicle, Mr. Gonzales looked startled or confused, and the officers thought he was planning to run. Officer Christopher Calicchia ordered Mr. Gonzales to stop, but Mr. Gonzales continued to walk away from the vehicle in the direction of the officers. As he walked toward them, the officers observed that he had his hands in his pockets. After receiving repeated instructions from Officer Calicchia, Mr. Gonzales eventually stopped and was handcuffed and patted down.

Officer Calicchia asked Mr. Gonzales for his identification, name, and date of birth. Mr. Gonzales could not produce a license or proof of insurance and gave Officer Calicchia a false name and birth date. After dispatch notified Officer Calicchia that it could not find a driver's license under the name and birth date provided, Mr. Gonzales was placed under arrest for driving without a license, failing to show proof of insurance, and providing false information. While performing a search incident to arrest, one of the officers found two rounds of

-4-

ammunition in Mr. Gonzales's pocket. When the Thornton police arrived on the scene, the Westminster officers briefed them about the arrest. The Thornton police then transported Mr. Gonzales to the Thornton-Westminster border where they turned him over to the Westminster police for booking.

Based on the sawed-off shotgun found in the Mercedes on January 8, Mr. Gonzales was charged with one count of being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and one count of possession of an unregistered firearm, *see* 26 U.S.C. § 5861(d). He was also charged with one count of being a felon in possession of illegal ammunition, *see* 18 U.S.C. § 922(g)(1), based on the March 12 incident. A jury subsequently convicted him on all three counts.

Mr. Gonzales raises four arguments on appeal: 1) there was insufficient evidence to support his conviction on the unregistered firearm count; 2) the district court abused its discretion by refusing to give a clarifying instruction regarding the "knowledge" element of the unregistered firearm count; 3) the district court erred in denying his motion to suppress the ammunition; and 4) the district court abused its discretion by refusing to sever the ammunition charge from the gun charges.

## II. DISCUSSION

A.    Sufficiency of the Evidence on the Unregistered Firearm Count

Under 26 U.S.C. § 5861(d), it is unlawful for any person to "possess a firearm which is not registered to him in the National Firearms Registration and

-5-

Transfer Record." For purposes of this provision, the definition of "firearm" includes a shotgun with a barrel less than eighteen inches in length or with an overall length less than twenty-six inches. 26 U.S.C. § 5845(a). In order to obtain a conviction under § 5861(d), the government must demonstrate that the defendant *knew* the barrel's length was less than eighteen inches or the overall length was less than twenty-six inches. *See Staples v. United States*, 511 U.S. 600, 619 (1994) (holding that the government must prove the defendant "knew of the features of [the firearm] that brought it within the scope of the Act"); *see also United States v. Michel*, 446 F.3d 1122, 1130 (10th Cir. 2006) (stating that the government is "required to prove beyond a reasonable doubt that [the defendant] knew the firearm in his possession had a barrel shorter than eighteen inches"). The government need not show, however, that the defendant knew that the shotgun's length required that it be registered. *See Michel*, 446 F.3d at 1130.

Mr. Gonzales does not dispute the shotgun barrel's length of thirteen-and-three-quarters inches or contend that the gun was properly registered with the National Firearms Registration and Transfer Record. He also does not dispute that the evidence established that he was the driver of the Mercedes and thus had possession of the gun. Rather, relying primarily on *United States v. Michel*, 446 F.3d 1122 (10th Cir. 2006), Mr. Gonzales argues that the government did not present sufficient evidence to establish that he knew the shotgun had a barrel of less than eighteen inches in length. *Michel* is, however, distinguishable from the

-6-

instant case.

In *Michel*, we held that the defendant's conviction under § 5861(d) could not stand because there was insufficient evidence that he knew the shotgun barrel was less than eighteen inches in length. *Id.* at 1132. Mr. Michel was a passenger in a vehicle owned and driven by a codefendant. When an officer pulled the vehicle over, he noticed Mr. Michel reaching toward the backseat of the vehicle. The officer looked inside the vehicle and saw the barrel of a gun behind the driver's seat. *Id.* at 1126. The firearm recovered from the vehicle was a sawed-off shotgun with a barrel length of ten-and-three-eighths inches. *Id.* The government, however, "presented absolutely no evidence that Mr. Michel ever observed or handled the gun." *Id.* at 1131. In reversing Mr. Michel's conviction, we noted that the evidence established only that Mr. Michel was in a car in which an unregistered firearm was discovered and that he reached toward the backseat where the gun was located. *Id.* at 1131–32. We held that the jury could reasonably infer that he knew the gun was in the car, but not—without more—that he knew the gun's barrel had been shortened. *Id.* at 1132.

Unlike in *Michel*, in the present case, the government introduced evidence that the shotgun was visible from the driver's seat and would have been obvious to the driver of the car. The evidence also showed that Mr. Gonzales was the sole owner of the vehicle and that he was the driver and only person in the car when it was pulled over on January 8. Moreover, several officers testified that the

-7-

shotgun was observably shorter than the legal length and the barrel was clearly sawed off. *See Staples*, 511 U.S. at 615 n.11 ("[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon."); *see also United States v. Miller*, 255 F.3d 1282, 1287 (11th Cir. 2001) ("[T]he length of the barrel is a patently obvious characteristic, readily apparent to anyone . . . who observes the gun."). The shotgun was also admitted into evidence and shown to the jury. *See id.* Because the length of the barrel was obvious and the gun was visible to Mr. Gonzales as the driver of the vehicle, the evidence was sufficient to allow the jury to reasonably infer that Mr. Gonzales knew the barrel was less than eighteen inches in length.

B.   Clarifying Instruction

Mr. Gonzales argues that the district court should have given a clarifying instruction related to the government's burden to prove he knew the length of the shotgun. While he concedes that the instructions initially given to the jury were adequate, he contends that the government's closing argument confused the jury, and a clarifying instruction was necessary, especially after the jury asked a question.

We review for abuse of discretion the district court's refusal to give a requested instruction. *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006). In determining whether the court properly exercised its discretion, "[w]e review the jury instructions as a whole to determine whether they correctly state

the governing law and provide an ample understanding of the issues and the applicable standards." *United States v. Arias-Santos*, 39 F.3d 1070, 1076 (10th Cir. 1994).

In Instruction 21, the district court instructed the jury as follows:

> In order to sustain its burden of proof for the possession of an unregistered firearm as charged in Count One of the Indictment, the government must prove the following four (4) essential elements beyond a reasonable doubt:

> First: [Mr. Gonzales] knowingly possessed a firearm;

> Second: [Mr. Gonzales] knew of the specific characteristics or features of the firearm - that it was a shotgun with a barrel of less than 18 inches in length or an overall length of less than 26 inches - that caused it to be registerable under the National Firearms Registration and Transfer Record;

> Third: the firearm was in operating condition or could readily have been put in operating condition; and

> Fourth: the firearm was not registered to [Mr. Gonzales] in the National Firearms Registration and Transfer Record. [Mr. Gonzales] has stipulated to this element of the offense, and you are, therefore, to consider this fourth element proven beyond a reasonable doubt.

> The government is not required to prove that [Mr. Gonzales] knew that the firearm had to be registered, knew what measurements caused a shotgun to be registered, or knew that the shotgun was not registered to him. For the purpose of Count One of the Indictment, a "firearm" includes a weapon made from a shotgun with a barrel of less than 18 inches in length or an overall length of less than 26 inches in length.

Mr. Gonzales concedes that this instruction accurately states the governing law.

The district court overruled Mr. Gonzales's objections to the government's

statements during closing that the characteristics of the shotgun were "obvious" and that it was "not a normal shotgun" or one that had "any legitimate purpose whatsoever." After closing arguments, Mr. Gonzales requested a clarifying instruction that told the jurors "they cannot find [Mr. Gonzales] guilty unless they determine that he knowingly possessed a weapon that was less than 18 inches or less than 26 inches." The district court denied the request because "the instructions speak for themselves" and "as a whole provide a fair instruction for the jury."

During deliberations, the jury asked whether there was a contradiction between the knowledge element of Instruction 21 and the final paragraph of the instruction. It also asked whether the final paragraph related to the knowledge element or only to the fourth element—that the gun was not registered (to which Mr. Gonzales had stipulated.). Mr. Gonzales proposed the following clarifying instruction:

> In answer to your question, the Court provides the following clarification. Before you can convict [Mr. Gonzales] of count one, you must find the government's proven beyond a reasonable doubt that Mr. Gonzales knowingly possessed the shotgun in question and that he specifically knew that the shotgun in question had a barrel length less than 18 inches or an overall length of less than 26.

The district court rejected Mr. Gonzales's proposed instruction and chose, over Mr. Gonzales's repeated objections, to instruct the jury that there was no contradiction between the knowledge element and the final paragraph of the

-10-

instruction. It told the jury the knowledge element "means what it says" and repeated the language from Instruction 21:

> [T]he government must prove beyond a reasonable doubt that [Mr. Gonzales] knew of the specific characteristics or features of the firearm, that it was a shotgun with a barrel of less than 18 inches in length or an overall length of less than 26 inches that caused it to be registerable under the [N]ational [F]irearms [R]egistration and [T]ransfer [] [R]ecord.

In addressing whether the final paragraph applied to the knowledge requirement or only to the fourth element regarding registration, the court stated:

> The final paragraph of instruction no. 21 relates to whether the defendant had knowledge of the law. The first sentence of the final paragraph means that the government is not required to prove that [Mr. Gonzales] knew that the firearm had to be registered, knew what measurements caused the shotgun to be registered, or knew that the shotgun was not registered to him. So that part of the final paragraph relates to the issue of whether the defendant knew the law or didn't know the law.

Upon receiving these answers, the jury returned a verdict finding Mr. Gonzales guilty on the unregistered firearm count.

We conclude that the district court did not abuse its discretion in refusing to give Mr. Gonzales's clarifying instruction to the jury. First, before closing argument the court made clear to the jury that the instructions must guide their decisions. It specifically instructed the jury:

> Counsel may quite properly refer to some of the applicable rules of law in their closing argument to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

-11-

Moreover, the instruction proposed by Mr. Gonzales would have, if anything, added to any possible confusion among the jurors. It would have told the jury that the government was required to prove that Mr. Gonzales "specifically knew" that the barrel's length was less than eighteen inches. This language implies that the jury cannot infer from the length and obvious physical characteristics of the gun that Mr. Gonzales knew the barrel was shorter than eighteen inches. This is not an accurate description of the governing law. *See Staples*, 511 U.S. at 615 n.11 ("[K]nowledge can be inferred from circumstantial evidence, including any external indications signaling the nature of the weapon."). The initial instruction and the court's response to the jury's question sufficiently informed the jury of the government's burden and the appropriate legal standards.

C.   Suppression of Ammunition

In reviewing the district court's denial of Mr. Gonzales's motion to suppress, we view the evidence in the light most favorable to the government, as the prevailing party, and unless clearly erroneous, we accept the district court's findings of fact. *United States v. Sawyer*, 441 F.3d 890, 894 (10th Cir. 2006). "The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo." *Id.* (quotation

omitted).[1]

A traffic stop constitutes a seizure under the Fourth Amendment and, thus, is constitutionally valid only if it is reasonable. *See United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). A stop is valid if it is "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* (quotation omitted). "[A] routine traffic stop is a relatively brief encounter and is more analogous to a so-called *Terry* stop . . . than to a formal arrest." *Id.* at 1286–87 (quotations omitted) (alteration in original). In determining if reasonable suspicion exists, the subjective motivations of the officer are irrelevant. *Id.* at 1286; *see also United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (noting that in examining the constitutionality of a traffic stop the "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction" (quotation omitted)).

Mr. Gonzales contends that the district court erred in denying his motion to suppress the ammunition obtained following the March 12 traffic stop as the fruit of a constitutional violation. Specifically, he argues that the "extra-jurisdictional" stop was unreasonable because it violated Colorado law, and

[1]On October 9, 2007, we abated this appeal pending the Supreme Court's decision in *Virginia v. Moore*, 128 S. Ct. 1598 (2008). Because that case has now been decided, we consider Mr. Gonzales's Fourth Amendment argument.

therefore, the officers had no "legal authority" to act.

We agree that the Westminster officers acted outside their jurisdiction under state law when they stopped Mr. Gonzales for a traffic violation in Thornton, and the government does not contest this fact. Colorado law provides:

> A peace officer shall have the authority to act in any situation in which a *felony or misdemeanor* has been or is being committed in such officer's presence, and such authority shall exist regardless of whether such officer is in the jurisdiction of the law enforcement agency that employs such officer or in some other jurisdiction within the state of Colorado . . . .

Colo. Rev. Stat. § 16-3-110(2) (emphasis added). Turning without signaling is a traffic infraction, not a felony or misdemeanor, under Colorado law. Colo. Rev. Stat. § 42-4-903(5). Thus, when the officers stopped Mr. Gonzales for a traffic infraction outside their jurisdiction, they violated Colorado law.

A state-law violation does not, however, necessarily rise to the level of a federal constitutional violation. *See Virginia v. Moore*, 128 S. Ct. 1598, 1605 (2008) (stating that while local law enforcement practices "vary from place to place and from time to time, Fourth Amendment protections are not so variable" (quotations omitted)); *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) ("The officers' violation of state law is not, without more, necessarily a federal constitutional violation."); *United States v. Green*, 178 F.3d 1099, 1105 (10th Cir. 1999) (noting that a state-law violation is "irrelevant as long as the standards developed under the Federal Constitution were not offended"). As the

Supreme Court recently made clear, "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Moore*, 128 S. Ct. at 1606. Thus, the question before us is whether the officers' actions were unreasonable within the meaning of the Fourth Amendment.[2]

Although, as Mr. Gonzales points out, we have indicated that compliance with state law may be relevant to our Fourth Amendment reasonableness analysis, we have never held it to be determinative of the constitutionality of police conduct. *See Sawyer*, 441 F.3d at 899 ("The touchstone of our jurisprudence remains whether the conduct in question contravenes the federal constitution.

---

[2] Mr. Gonzales argues that the traffic stop in the instant case is analogous to a warrantless arrest. In *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990), we held that a "warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause" and is therefore "presumptively unreasonable" in the absence of exigent circumstances. *Id.* at 1354. We subsequently declined to extend this holding to the context of warranted searches. *See Green*, 178 F.3d at 1106 (holding that, when acting pursuant to a valid warrant, the police did not violate the Fourth Amendment by acting outside their jurisdiction in violation of state law).

We note, first, that the traffic stop in this case is more analogous to a warranted seizure than a warrantless one because traffic stops do not require warrants and the requirement for a lawful stop—the observed traffic violation—was satisfied. Second, we distinguished *Ross*, a case involving an arrest on tribal land, when an officer made a warrantless arrest outside his jurisdiction, but within a political subdivision of the same state. *See Mikulski*, 317 F.3d at 1232. Thus, even a warrantless arrest would not necessarily rise to a constitutional violation under the facts of the present case because the Westminster officers were acting in Thornton; that is, they were acting between political subdivisions of the same state.

This inquiry does not, and has not, required a separate justification for police conduct 'independent' from a state law violation."). Indeed, we have held that compliance with state law is "highly determinative" only when the constitutional test requires an examination of the relevant state law or interests. *Id.* at 896–97. In *Sawyer*, for example, we noted that an officer's failure to comply with state law is critical to a determination of whether exigent circumstances justify a warrantless search because the "federal test for exigent circumstances asks in part whether a state assigns a high level of interest to the evidence the government seeks to admit." *See id.* at 896 (discussing *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157 (10th Cir. 2003)); *see also id.* at 897 (discussing *United States v. Ibarra*, 955 F.2d 1405 (10th Cir. 1992), where we considered state law "because inventory searches involve a special incorporation of state law into Fourth Amendment jurisprudence").

Here, however, we need not examine state law or interests. The federal test for determining the validity of a traffic stop simply requires us to determine whether a traffic violation has occurred: "A traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Callarman*, 273 F.3d at 1286 (quotation omitted). It does not require an examination of a state's law or interests, but focuses instead on whether the stop was reasonable under the circumstances.

We conclude that the stop in this case was reasonable. The Westminster officers' actions were based on an observed traffic violation, and Mr. Gonzales does not assert any facts other than the state-law violation that would make the stop unreasonable. Accordingly, the officers' actions, although in violation of Colorado law, did not rise to the level of a Fourth Amendment violation.[3]

D.    Prejudicial Joinder

Two counts may be joined if the two offenses "are of the same or similar character." *See* Fed. R. Crim. P. 8(a). The district court may, however, sever the counts if the defendant will be prejudiced by their joinder. *See* Fed. R. Crim. P. 14(a). In this case, the district court denied Mr. Gonzales's motion to sever the ammunition count, arising out of the March 12 traffic stop, from the firearm counts, which stemmed from the January 8 incident. Mr. Gonzales does not contend that the counts were improperly joined under Rule 8; rather, he argues that the joinder was prejudicial under Rule 14. We review the district court's denial of a motion to sever under Rule 14 for abuse of discretion. *United States v. Colonna*, 360 F.3d 1169, 1177 (10th Cir. 2004). We will not reverse the district court's decision "absent a strong showing of prejudice." *Id.* (quotation omitted).

---

[3]Although Mr. Gonzales does not challenge what transpired after he was stopped, his detention subsequent to the stop also survives Fourth Amendment scrutiny. *See United States v. Jones*, 44 F.3d 860, 872 (10th Cir. 1995) ("An officer conducting a routine traffic stop may legitimately detain a driver while requesting a driver's license and vehicle registration . . . .").

We are not persuaded by Mr. Gonzales's claim that prejudice resulted because the government "was able to bolster" its case on the January 8 counts by trying them together with the March 12 count. Mr. Gonzales argues that because the counts were of the "same or similar character," prejudice was more likely to result. *See United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993) (explaining that prejudice can occur when offenses of the same or similar character are joined because "proof of one crime may tend to corroborate the commission of the other crime in violation of the evidentiary rules against evidence of a general criminal disposition"). The counts involving the firearm were, however, "separate and distinct" from the ammunition count; the firearm offenses did not occur on the same date or in the same place as the ammunition offense, and they involved entirely different officers and witnesses. *See id.* ("The offenses took place on different dates at different locations, and different witnesses and evidence were presented on each count."). The evidence was not therefore "too confusing or unfairly overlapping." *Id.* Moreover, each individual count was supported by sufficient evidence. *See id.* Under these circumstances, the evidence was not likely to confuse the jury. Accordingly, the district court did not abuse its discretion in denying the motion to sever.

### III. CONCLUSION

For the foregoing reasons, we VACATE our order of abatement and AFFIRM Mr. Gonzales's conviction on all counts.