**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

P. CHRISTOPHER SWANSON,
GERALDINE SCHMIDT, and
JOANNE ROE, individually and on
behalf of all persons similarly situated,

     Plaintiffs-Appellees,

  v.

THE TOWN OF MOUNTAIN VIEW,
COLORADO, POLICE CHIEF ERIC
GOMEZ, in his individual and official
capacity, POLICE OFFICER DAVID
GROFF, in his individual and official
capacity, POLICE OFFICER
HERNANDEZ, in his individual and
official capacity, and POLICE
OFFICER PEREZ, in his individual
and official capacity,

     Defendants-Appellants.

No. 08-1105

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 06-cv-2272-REB-MJW)**

---

Eric M. Ziporin (Elliot J. Scott with him on the briefs), Senter Goldfarb & Rice,
L.L.C., Denver, Colorado for Appellants.

Althea S. Licht (David A. Lane with her on the brief), Killmer, Lane & Newman,
LLP, Denver, Colorado for Appellees.

---

Before **HARTZ**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

This case arises from allegations that traffic police for the town of Mountain View, Colorado issued tickets for infractions committed outside the town's boundaries. Mountain View is a small suburb adjacent to Denver, sharing several streets as a common border. The plaintiffs here are motorists who were stopped and ticketed by Mountain View officers for infractions that occurred on the border streets but within the city of Denver.

In this 42 U.S.C. § 1983 action, the plaintiffs contend these stops violated their clearly established Fourth Amendment right to be free from unreasonable seizures. The district court denied the defendants' request for qualified immunity, and the defendants brought this interlocutory appeal.

Because these traffic stops outside municipal boundaries did not violate clearly established Fourth Amendment law at the time of the violations, we REVERSE.

## I. Background

Mountain View is a small town with fewer than 600 residents. It lies on the western boundary of Denver, and Sheridan Boulevard forms the dividing line between the two jurisdictions. Sheridan Boulevard is a four lane city street, but only its southbound lanes are located in Mountain View. Forty-fourth Avenue

forms the northern border of Mountain View, with only the eastbound lanes in Mountain View.

Christopher Swanson and Geraldine Schmidt were each stopped by a Mountain View officer while turning onto northbound Sheridan Boulevard. Because of their locations, neither was in Mountain View when committing the infraction or when stopped.

In particular, in February 2006, Mountain View Officer David Groff stopped Swanson's vehicle after Swanson illegally turned right onto northbound Sheridan from 44th Avenue. Swanson admitted that his turn was illegal because he turned right on a red light, which was prohibited at that intersection. Swanson contested the citation on the basis of Officer Groff's jurisdiction, however, and after Swanson and Police Chief Eric Gomez discussed the issue, Swanson's citation was dismissed. No one disputes that Swanson's traffic violation occurred in Denver, not Mountain View.

The facts underlying Schmidt's stop were similar. Officer Groff stopped Schmidt's vehicle when she made an illegal right turn from westbound 41st Avenue to northbound Sheridan. Schmidt admitted to making a prohibited turn. Unlike Swanson, however, she pleaded guilty and paid a fine of $115 to Mountain View. Mountain View does not now contest that Schmidt's traffic violation occurred in Denver.

Asserting Fourth Amendment violations, Swanson and Schmidt filed a § 1983 class action suit against various Mountain View police officers and Mountain View's police chief.[1]  They sought damages for the illegal stops.[2]

The officers responded that they were entitled to qualified immunity because the stops did not amount to Fourth Amendment violations—or at least not violations of clearly established Fourth Amendment principles.  The district court denied the defendants' request for qualified immunity, and the defendants brought this interlocutory appeal.

Before we turn to the analysis, we briefly address our jurisdiction.  "The denial of a summary judgment motion ordinarily is not an appealable final order." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009) (quoting *Bass v. Richards*, 308 F.3d 1081, 1086 (10th Cir. 2002)).  When a party has been denied qualified immunity, however, that denial can be appealed prior to a final judgment to the extent the appeal is based on an issue of law.  *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).   In this posture, although we may review the district court's legal conclusions, we lack jurisdiction to review factual determinations.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008)

---

[1]  This interlocutory appeal includes only plaintiffs Swanson and Schmidt. The class action has yet to be certified.

[2]  The plaintiffs also brought municipal liability claims against the town of Mountain View and contend the town violated their Fourth Amendment rights against unreasonable seizure through a policy of improperly issuing citations outside of Mountain View's jurisdiction.

(citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996), and *Johnson v. Jones*, 515 U.S. 304, 316 (1995)).

## II. Analysis

Qualified immunity protects "government officials performing discretionary functions" and shields them from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity serves to insulate public officials "from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806.

In qualified immunity cases at the summary judgment stage, a plaintiff must clear two hurdles. The plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity. *Pearson v. Callahan*, 129 S. Ct. 808, 815–16, 818 (2009); *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

Recognizing the complexities of resolving the question of constitutional liability, the Supreme Court allows us the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 817–18; *see Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009)

(explaining that *Pearson* granted discretion to determine which qualified immunity prong to address first).

Here, the district court denied the police officers' motion for summary judgment, finding that the plaintiffs satisfied their two-part burden. To affirm, we must agree that the plaintiffs cleared both hurdles—we must thus address both. To reverse, however, we need only find that the plaintiffs failed either requirement. Because we conclude the conduct here did not violate *clearly established* constitutional rights, we take the advice of *Pearson* and address that issue first.[3]

### A. Clearly Established Law

The officers contend that even assuming a constitutional violation—an issue we need not reach—it was not clearly established at the time of the traffic stops that those stops would have been unconstitutional. We agree.

#### 1. Background Principles.

A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). Indeed, a "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has

---

[3] This conclusion applies not only to the police officers, but also to the police chief. *See Graves v. Thomas*, 450 F.3d 1215, 1225 (10th Cir. 2006) ("A supervisor who is sued in his or her personal capacity is entitled to invoke the defense of qualified immunity." (citation omitted)).

violated it." *Green v. Post*, No. 08-1122, 2009 WL 2422762, at \*4 (10th Cir. August 7, 2009) (citation omitted). "Although Plaintiff does not need to find a case with an identical factual situation, he still must show legal authority which makes it 'apparent' that 'in the light of pre-existing law' a reasonable official . . . would have known that [the conduct in question violated the constitutional right at issue]." *Id.* (citation omitted). Therefore, for a right to be clearly established we look for "Supreme Court or Tenth Circuit precedent on point," or clearly established weight of authority from other courts that "found the law to be as the plaintiff maintains." *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009).

One purpose of qualified immunity is that we do not force public officials to guess how the law will have developed by the time their actions are scrutinized in federal court. Instead, we look to the relevant precedents at the time of the challenged actions and the obviousness of the violation in light of them. *Milligan-Hitt v. Bd. of Trs. of Sheridan County*, 523 F.3d 1219, 1233 (10th Cir. 2008) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)).

Because the law must be clearly established at the time of the incident, *Harlow*, 457 U.S. at 818, cases published before the incident govern our analysis. *Milligan-Hitt*, 523 F.3d at 1233. But we also examine cases published after the conduct in question to the extent they shed light on the fact that the law was not clearly established at the relevant time.

Before turning to the relevant precedent, we want to emphasize that the alleged conduct is, to say the least, troubling. The plaintiffs assert the Mountain View police department established a policy of allowing its officers to perform routine traffic stops outside its town boundaries, and then prosecuted the violations as if they had occurred within the town itself. Whether as a matter of administrative convenience or revenue generation, enforcing traffic laws outside city limits where not specifically authorized by state law raises serious legal concerns.[4] Nevertheless, for us to rule in this appeal on the precise contours of the constitutional question raised by the town's policy is unnecessary because Tenth Circuit law did not clearly establish a Fourth Amendment violation at the time of the conduct.

2. *Applicable Precedent.*

As a starting point, the plaintiffs rely on basic Fourth Amendment search and seizure jurisprudence. They contend Tenth Circuit law was clear at the time of the incidents that traffic stops constitute seizures under the Fourth Amendment. They emphasize that the stops here were not isolated instances, but part of numerous stops pursuant to Mountain View's policy of ticketing motorists outside town boundaries.

---

[4] For example, Mountain View unnecessarily takes the risk that its prosecution of traffic tickets based on a false assumption of jurisdiction exposes it to malicious prosecution or abuse of process claims. *See, e.g.*, *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008).

Under our cases, a traffic stop is valid under the Fourth Amendment if it is "based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) (citation omitted). And our cases are clear that the reasonableness of the traffic stop is an objective inquiry. We do not consider the subjective motivations of law enforcement—those motivations are irrelevant. *See United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). Instead, the "sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *Id.* (quotation omitted).

We agree with the plaintiffs that Colorado law does not permit officers to enforce traffic infractions outside their home jurisdiction. As we held in *United States v. Gonzales*, 535 F.3d 1174, 1182 (10th Cir. 2008), when officers stop a suspect for a "traffic violation outside their jurisdiction, they violate[] Colorado law." But this violation of Colorado law does not necessarily mean the defendants violated the plaintiffs' federal constitutional rights.

With this general framework in mind, we turn to the precedent that applies to extra-jurisdictional police stops.

The plaintiffs and the district court rely on a 1990 case, *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990), to support their conclusion that the officers committed a constitutional violation. They contend *Ross* stands for the

fundamental principle that Fourth Amendment seizures outside an officers' home jurisdiction are unconstitutional. In *Ross*, a visitor on Indian tribal land claimed that an Oklahoma state police officer who had observed him commit a crime unlawfully arrested him on tribal land. The defendant contended the officer could not arrest him because a federal statute limited jurisdiction on tribal lands to federal agents and Indian officials. *Id*. at 1351. We found the arrest violated the Fourth Amendment, holding that a "warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause" and is "presumptively unreasonable" in the absence of exigent circumstances. *Id*. at 1354.

Relying on *Ross*, the plaintiffs contend the law was clearly established that extra-jurisdictional traffic stops are likewise unconstitutional. At first blush *Ross* provides appealing support for that position. An examination of subsequent Tenth Circuit cases interpreting *Ross*, however, shows its holding cannot be stretched so far.

Two cases that limit the breadth of *Ross* are particularly relevant. The first is *United States v. Green*, 178 F.3d 1099 (10th Cir. 1999). In *Green*, we held that police officers did not violate the Fourth Amendment when effectuating a warranted search, even if they were acting outside of their jurisdiction in violation of state law. That an arrest, search, or seizure may have violated state law, we explained, is "irrelevant as long as the standards developed under the Federal Constitution were not offended." *Id.* at 1105. We specifically

-10-

distinguished *Ross* on the grounds that the officers there made a warrantless arrest outside the arresting officer's jurisdiction, while the officers in *Green* had a warrant. "[W]e decline[d] to extend *Ross* to the context of warranted searches," we said;

> [t]he Fourth Amendment is satisfied where, as here, officers obtain a warrant grounded in probable cause and phrased with sufficient particularity, from a magistrate of the relevant jurisdiction authorizing them to search a particular location, *even if those officers are acting outside their jurisdiction as defined by state law*.

*Id*. at 1106 (emphasis added).

In a more recent case, we further limited the scope of *Ross*. In *United States v. Mikulski*, 317 F.3d 1228 (10th Cir. 2003), we held a Utah detective did not violate the Fourth Amendment when making a warrantless arrest outside his home jurisdiction, but within another political subdivision of the state. The arrest in *Mikulski* occurred after officers investigating suspects for an unrelated crime noticed the suspects' truck lacked a front license plate. After approaching the vehicle, an officer conducted a frisk in the interest of officer safety and to check for identification. In doing so, the officer discovered a pistol in the driver's pocket, and placed the driver under arrest. *Id.* at 1230.

Utah has a statute that permits a peace officer to exercise authority beyond the limits of that officer's jurisdiction, but within the state, in limited circumstances. For example, an officer may act outside his jurisdiction when (1) in cooperation with local authorities, the officer is participating in an investigation of criminal activity which originated in the officer's jurisdiction, (2) the officer is

in fresh pursuit of a suspect, or (3) the officer observes the commission of a "public offense." *Id.* at 1231. Prior to taking any action authorized by that statute, the officer must notify and receive approval of local law enforcement authority, or, if prior contact is not reasonably possible, the officer must notify the local authority as soon as reasonably possible. *Id.*

The officers in *Mikulski* conceded they did not comply with Utah law in coordinating their investigation with local law enforcement authorities. *Id.* We explained, however, that a "violation of state law is not, without more, necessarily a federal constitutional violation." *Id.* at 1232. We then concluded that "[d]espite the apparent violation of state law, we cannot say that the officers' actions amounted to a federal [Fourth Amendment] violation." *Id.* at 1233. In reaching this conclusion, we emphasized that state law allowed peace officers (with authorization) to act within neighboring political subdivisions, whereas in *Ross*, under no circumstances would the officer have had authority to act on tribal lands. *Id.* at 1232–33. We found it significant that the detectives, upon noticing the equipment violation, had probable cause to believe a "public offense" had been committed. *Id.* at 1233. We also noted that the detective learned Mikulski was armed. Under the circumstances, we concluded the extra-jurisdictional—but within a political subdivision of the state—arrest by the detective did not rise to the level of a Fourth Amendment violation.

Finally, our most recent relevant decision, *United States v. Gonzales*, 535 F.3d 1174 (10th Cir. 2008)—although decided after the incidents (and after the

-12-

district court's summary judgment order in this case)—provides further support for our conclusion. *Gonzales* illustrates the limited scope of *Ross* and highlights why the conduct at issue here did not violate clearly established Fourth Amendment principles as of 2006.

In *Gonzales*, we held that an extra-jurisdictional traffic stop based on an observed traffic violation does not constitute a Fourth Amendment violation, despite the fact that the stop violated state law. *Id.* at 1181–83 & n.2. Relying in large part on *Mikulski* and *Green*, as well as *Callarman* and *Botero-Ospina*, we concluded that the traffic stop outside the officers' home jurisdiction did not rise to the level of a federal constitutional violation. *Id.* at 1182 (citing *Mikulski,* 317 F.3d at 1232 ("The officers' violation of state law is not, without more, necessarily a federal constitutional violation."), and *Green*, 178 F.3d at 1105 (noting that a state-law violation is "irrelevant as long as the standards developed under the Federal Constitution were not offended")). We also cited *Virginia v. Moore*, 128 S. Ct. 1598, 1605 (2008), where the Supreme Court instructed us to disregard state law variation for Fourth Amendment purposes: while local law enforcement practices might "vary from place to place and from time to time, Fourth Amendment protections are not so variable."

We explained that although Tenth Circuit law holds that compliance with state law may be relevant to the court's Fourth Amendment reasonableness analysis, "we have never held it to be determinative of the constitutionality of police conduct." *Gonzales*, 535 F.3d at 1182. Instead, "compliance with state law

-13-

is 'highly determinative' only when the constitutional test requires an examination of the relevant state law or interests." *Id.*

And in the context of traffic stops, we explained, compliance with state law provided little help. *Id.* at 1183. Rather, pursuant to our clear precedent a "traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *Id.* (citing *Callarman*, 273 F.3d at 1286 (quotation omitted)). Moreover, if reasonable suspicion exists, our law provides that the subjective motivations of the officer are irrelevant. *Id.* at 1181.

In specifically addressing *Ross*, we explained that subsequent cases "declined to extend [the *Ross*] holding to the context of warranted searches." *Id.* at 1182 n.2 (citing *Green*, 178 F.3d at 1106). *Ross*, moreover, was inapplicable in the context of a traffic stop for two independent reasons. First, a traffic stop is more analogous to a warranted seizure because traffic stops do not require warrants—the only requirement for a lawful stop is an observed traffic violation. *Id.* Second, the arrest in *Ross* took place on federal tribal land, and not within a "political subdivision, " i.e., a municipality, of the same state. *Id.* (citing *Mikulski*, 317 F.3d at 1232).

We explained that the "federal test for determining the validity of a traffic stop simply requires us to determine whether a traffic violation has occurred. . . . It does not require an examination of a state law or interests, but focuses instead

-14-

on whether the stop was reasonable under the circumstances." *Id.* at 1183. We thus concluded that even a warrantless arrest following a traffic violation would not necessarily rise to a constitutional violation when the officers were acting within political subdivisions of the same state.

In short, we concluded that the traffic stop outside the officers' home jurisdiction, even if unauthorized by state law, did not constitute an unlawful seizure under the Fourth Amendment.[5]

* * *

Applying these cases here, even assuming a constitutional violation, a reasonable police officer would not have known in 2006 that the extra-jurisdictional, but within the same state, traffic stops constituted a violation of clearly established Fourth Amendment law, when no dispute exists that the officer observed traffic violations before effectuating the stops.

## B. Pendent Jurisdiction

The defendants also ask us to exercise pendent jurisdiction over the claims against Mountain View. The exercise of pendent jurisdiction is discretionary, and it "is generally disfavored." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998) (citing *Moore v. City of Wynnewood*, 57 F.3d 924, 929 (10th

---

[5] Our conclusion is also supported by *United States v. Sawyer*, 441 F.3d 890, 898–99 (10th Cir. 2006). In *Sawyer*, we described *Mikulski* as holding that a warrantless arrest outside an officer's jurisdiction (but within the same state) did not rise to a constitutional violation even though the arrest violated state law in part because the officers were acting within political subdivisions of the same state.

Cir. 1995)); *Roska v. Sneddon*, 437 F.3d 964, 970 (10th Cir. 2006). We see no sound basis to stray from this principle, and decline to exercise jurisdiction over the municipal liability claims against the town.

### III. Conclusion

For the following reasons we REVERSE, concluding that the Mountain View police officers are entitled to qualified immunity. We remand for further proceedings consistent with this opinion.