FILED
United States Court of Appeals
Tenth Circuit

September 1, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

TRI-STATE CONTRACTORS, INC.;
DEL BARTEL; DALE THURGOOD,

     Plaintiffs-Appellees,

v.

DAVID FAGNANT, individually and as
Mayor; MIKE ARCHIBALD, individually
and as City Administrator; TONY
TOMASSI, individually and as City
Councilman,

     Defendants-Appellants.

No. 08-8099
(D.C. No. 1:07-CV-112-B)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, Chief Judge, **EBEL** and **KELLY**, Circuit Judges.

_____

In April 2006, Plaintiff-Appellee Tri-State Contractors submitted a bid, and an

accompanying bid bond, to construct a new city building in Kemmerer, Wyoming.

Although the city did not accept Tri-State's bid, it did not return Tri-State's bond.

Instead, over the next several months, the city and Tri-State negotiated ways to control

_____

     [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

costs for the construction project, and the two parties ultimately entered into a contract in July 2006. After signing the contract, Tri-State alleged that numerous undisclosed deficiencies with the building site made construction at the agreed-upon rate impossible. Tri-State thus withdrew from the contract and demanded the return of its bid bond, which the city claimed a right to keep as liquidated damages for Tri-State's withdrawal.

Tri-State, along with Plaintiffs-Appellees Del Bartel and Dale Thurgood (collectively, "Tri-State"), brought suit against Kemmerer and several city officials. The district court granted Tri-State's motion for summary judgment against the city for return of the bond and denied the individual Defendants' motion for summary judgment on the ground of qualified immunity. The individual Defendants now appeal that denial. For the reasons that follow, we affirm.

## I.  Background

The parties agree as to the basic facts at issue in this appeal. In April 2006, the city of Kemmerer, Wyoming, advertised for bids for the construction of a 7800 square-foot building. The building, called the Kemmerer American Family Entertainment Center, was to be an addition to the Victory Theater, located in the city's downtown area, and was to serve as a recreational facility for Kemmerer residents. The advertisement issued by the city required that "[a]ll bids must be accompanied by either a certified check, cashier's check drawn on an acceptable bank, or an acceptable bid bond, executed by an approved Surety Company, in an amount no less than five percent (5%) of the total

sum of the bid." (Apt. App. at 82.) Wyoming law also requires that a bid for a public improvement contract be accompanied by a bid bond equal to at least five percent of the total bid amount. Wyo. Stat. Ann. § 15-1-113(f). The advertisement further provided that the check or bond "will be retained by [the city of Kemmerer] as liquidated damages if the successful bidder refuses or fails to enter into a contract and bond in accord with his bid when notified of the award." (Apt. App. at 82.) The winning bidder would also be required to provide the city with both a performance bond and a payment bond, "each in the penal sum equal to the total amount of his bid." (Id.)

On April 18, 2006, three bids were presented, and the bids were opened and read aloud. Tri-State Contractors submitted the lowest bid, at $1,163,845, along with a certified check in the amount of $58,192 serving as the bid bond. Nevertheless, no bids were accepted at that time. Appellant Mike Archibald, Kemmerer City Administrator, spoke to both Tri-State and the city council about Tri-State's bid, informing all parties that the bids were substantially over the city's allocated budget. Archibald proposed "value engineering" the project—meaning that the involved parties, owner, contractor, and engineer, all agreed to revisit the project and look for ways to cut costs—and both the city council and Tri-State agreed. The option to value engineer the project was given only to Tri-State as the lowest bidder. Tri-State's bid bond was not returned.

On July 10, Tri-State submitted another bid form, for $1,079,920. Tri-State did not submit a bid bond with that form, as the city had retained their original $58,192 bid bond. The city accepted this bid, and entered into a contract with Tri-State on July 26,

3

2006. The city did not advertise for any further bids between the bid-opening on April 18 and the signing of the Tri-State contract on July 26. On August 7, the city issued Tri-State a "Notice to Proceed," instructing it to commence construction within one week. On August 25, Tri-State hand-delivered a letter to Archibald, informing him that, because of numerous deficiencies with the building site that made it impossible to begin construction, Tri-State was withdrawing from the contract. In the letter, Tri-State also demanded return of its bid bond. The city refused to return the bond, insisting on its right to retain the bond as liquidated damages for Tri-State's alleged breach of the construction contract.

In May 2007, Tri-State brought suit in federal court against the city of Kemmerer, and Appellants Archibald, David Fagnant (mayor of Kemmerer), and Tony Tomassi (a city councilman). Tri-State alleged that the defendants deprived Tri-State of its property rights without due process of law, in violation of 42 U.S.C. §§ 1983 & 1988. The defendants moved for summary judgment on all counts, and Tri-State moved for partial summary judgment against the city. On November 17, 2008, the district court denied the defendants' motion for summary judgment and granted Tri-State's motion for partial summary judgment as to the procedural due process claim against the city. In addition, the court denied the individual defendants' motion for summary judgment on the ground of qualified immunity, and entered summary judgment in favor of Plaintiffs against the

4

individual defendants in both their individual and official capacities.[1] On this basis, the court ordered that Tri-State was entitled to the return of its bid bond in the amount of $58,192, plus interest.[2] The court then dismissed all remaining claims. One week later, the district court entered an order amending the November 17 order by clarifying that Tri-State's claim for punitive damages was not dismissed.

The individual defendants then filed this appeal, claiming that the district court erred in concluding that they were not entitled to summary judgment in their individual capacities on the ground of qualified immunity.

## II. Discussion

### A. Jurisdiction

A district court's order denying summary judgment is generally not an appealable order under 28 U.S.C. § 1291. See Bowling v. Rector, 584 F.3d 956, 963 (10th Cir. 2009). "Such a denial 'is subject to appeal, however, when the defendants are public officials asserting a qualified immunity defense and the appealed issue is whether a given set of facts establishes that defendants violated clearly established law.'" Id. (quoting Bass v. Richards, 308 F.3d 1081, 1086 (10th Cir. 2002)). When reviewing a denial of

---

[1] The district court found that all three individuals were personally involved in various decisions that violated Tri-State's due process rights. Appellants do not challenge the finding of personal responsibility on appeal.

[2] At oral argument, the parties informed this Court that the city has now refunded the bond to Tri-State.

qualified immunity, this court lacks jurisdiction to review the district court's factual determinations, see Swanson v. Town of Mountain View, Colo., 577 F.3d 1196, 1199 (10th Cir. 2009), but no material factual disputes exist here.

Tri-State interprets the language limiting our review to "whether a given set of facts establishes that defendants violated clearly established law" to mean that the court of appeals only has jurisdiction to consider the "clearly established" prong of the qualified immunity analysis. Accordingly, Tri-State argues that we lack jurisdiction over the portion of the appeal challenging whether Appellants violated Tri-State's constitutional rights. (Apls.' Br. at 1.) Tri-State has misinterpreted the standard; this court has jurisdiction to review any of the district court's legal conclusions, regardless of which prong of the qualified immunity test the legal conclusions concern. See Swanson, 577 F.3d at 1199 ("[W]e may review the district court's legal conclusions, [but not its] factual determinations."). Therefore, we have jurisdiction to consider both of Appellants' purely legal arguments: that they did not violate Tri-State's due process rights and, even if they did, such rights were not clearly established.

### B. Standard of review

"We review de novo the district court's denial of a summary judgment motion asserting qualified immunity, and we apply the same legal standard that the district court applied." Bowling, 584 F.3d at 963. Accordingly, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

6

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

Qualified immunity applies only to defendants who are sued in their individual capacities, not in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); accordingly, the district court's conclusion that Appellants, acting in their official capacities, violated Tri-State's due process rights is not before this court. When the summary judgment order is based on qualified immunity, the plaintiff must "meet a strict two-part test." Bowling, 584 F.3d at 964 (quotation omitted). The plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." Id. (quotation omitted). This court has discretion to "decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 818 (2009). Appellants contend that they are entitled to qualified immunity because their conduct did not violate Tri-State's due process rights and, even if it did, such rights were not clearly established.

## C. Appellants violated Tri-State's due process rights

Appellants claim that the district court erred in concluding that they violated Tri-State's procedural due process rights because Tri-State did not have a property interest in the bond. When confronting a procedural due process issue, this court "engage[s] in a two-step inquiry . . . : (1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219

(10th Cir. 2006) (quotations omitted).  The district court concluded that Tri-State did

possess a property right in the bond and that the town unilaterally decided to keep the bid

bond as liquidated damages without affording Tri-State any hearing at which it could

object.  On appeal, Appellants argue that Tri-State possessed no cognizable property

interest in the bond.[3]

A property interest exists "in those things to which [a plaintiff] has 'a legitimate

claim of entitlement.'"  Richman v. Straley, 48 F.3d 1139, 1143 (10th Cir. 1995) (quoting

Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Property interests derive not from the

Constitution itself, but rather from "existing rules or understandings that stem from an

independent source such as state law."  Stears v. Sheridan County Mem. Hosp. Bd. of

Trustees, 491 F.3d 1160, 1163 (10th Cir. 2007) (quotation omitted); see also Dickerson v.

Quarberg, 844 F.2d 1435, 1437 (10th Cir. 1988) ("Property interests are not created by

the Constitution, but arise from independent sources such as state statutes . . . .").

---

[3] Nearly all of Appellants' brief is devoted to arguing (1) that Tri-State did not possess a
property interest in the bond, and (2) that even if they did, the property interest was not
clearly established.  However, Appellants do argue in passing that "the 'opportunity to
proceed in state court [is] all the process that [is] due.'"  (Apts.' Br. at 23 (quoting Union
Pac. R.R. Co. v. Vill. of S. Barrington, 958 F. Supp. 1285, 1295 (N.D. Ill. 1997))).
  Even if this passing reference suffices to raise the issue of whether Tri-State was
afforded an appropriate level of process—which it may not, see Harsco Corp v. Renner,
475 F.3d 1179, 1190 (10th Cir. 2007) ("[A] party waives those arguments that its opening
brief inadequately addresses.")—Appellants did not raise the adequate process issue at all
in the district court.  "Failure to raise an issue in the district court generally constitutes
waiver."  WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1197 (10th Cir. 2010)
(internal quotations omitted).  Appellants have therefore waived any argument they might
otherwise have that Tri-State was afforded an appropriate level of process by having the
ability to sue in state court.

"Although the underlying substantive interest is created by an independent source such as state law, <u>federal constitutional law</u> determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  <u>Town of Castle Rock, Colo. v. Gonzales</u>, 545 U.S. 748, 757 (2005) (quotations omitted).

The statute at issue here requires that bidders for a public improvement contract "shall be required to accompany each bid with a bid bond."  Wyo. Stat. Ann. § 15-1-113(f).  The statute provides only two instances in which the municipality may retain the bid bond as damages:

> The bid guarantee shall be forfeited as liquidated damages if the bidder, upon the letting of the contract to him, [1] fails to enter into the contract within thirty (30) days after it is presented to him for that purpose or [2] fails to proceed with the performance of the contract.

<u>Id.</u>  By the plain language of the statute, these terms authorizing retention of the bid bond by the city only apply "upon the letting of the contract to [the bidder]."  <u>Id.</u>  Accordingly, if the city <u>rejects</u> the bid and does not let the contract to the bidder, this statute provides no authority for the city to retain the bond.

Here, the city rejected Tri-State's bid when the city counteroffered by proposing to value engineer the project.  <u>See</u> <u>Panhandle Eastern Pipe Line Co. v. Smith</u>, 637 P.2d 1020, 1023 (Wyo. 1981) ("The law of contract formation dictates that one who modifies an offer has usually rejected the offer and made a counteroffer, and that no contract exists unless the original offeror accepts the counteroffer.").  Thus, the city kept Tri-State's bid bond when it had no authority under the statute to do so.  Since the city lacked authority

9

to keep its bond, Tri-State had a "legitimate claim of entitlement" to it, and therefore a property interest in the bond. Richman, 48 F.3d at 1143. Tri-State's due process rights were therefore violated because they were deprived of a property interest without due process of law.

### D. Tri-State's due process rights were clearly established

Appellants also contend that, even if they violated Tri-State's due process rights, such rights were not clearly established. Inquiring into whether a right was clearly established is a case-specific inquiry that asks whether a reasonable official would recognize that his conduct was unlawful in the situation. Bowling, 584 F.3d at 964. "Summary judgment based on qualified immunity is appropriate if the law did not put the [official] on notice that his conduct would be clearly unlawful. Id. (quotations omitted).

As Appellants have waived any argument they may have had that Tri-State received adequate process after the city retained its bond, the proper inquiry under the clearly established prong is simply whether Tri-State's property interest in the bond was clearly established. See, e.g., Kingsford v. Salt Lake City Sch. Dist., 247 F.3d 1123, 1126 (10th Cir. 2001) (affirming the denial of qualified immunity "[b]ecause the law on which [plaintiff] relies for his property interest due process claim was clearly established at the time of the events underlying this suit"); Greene v. Barrett, 174 F.3d 1136, 1142 (10th Cir. 1999) (addressing whether plaintiff's "asserted property right was clearly established"); Patrick v. Miller, 953 F.2d 1240, 1244 (10th Cir. 1992) (holding that plaintiff must prove "he had a clearly established property interest" in order to defeat

10

qualified immunity on a procedural due process claim).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Cordova v. Aragon, 569 F.3d 1183, 1192 (10th Cir. 2009), cert. denied, 130 S.Ct. 1146 (2010). However, "if the text of a [state] statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity." Robbins v. Wilkie, 433 F.3d 755, 771 (10th Cir. 2006), reversed on other grounds, Wilkie v. Robbins, 551 U.S. 537 (2007); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987) (holding that, for a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). Thus, in the absence of case law interpreting the statute, a statutorily-created right is clearly established when the statute is subject to no other reasonable interpretation.

In Greene v. Barrett, for example, a deputy sheriff in Wyoming claimed that the defendant reduced his rank without due process of law. We concluded that the plaintiff had a property interest, created by a Wyoming statute, in his rank. 174 F.3d at 1141. The fact that a statute created the interest did not automatically demonstrate that the right was clearly established, however. We also found that the statutory provision creating the property interest was ambiguous because it could be interpreted in three different

11

reasonable ways. Id. at 1143 ("Although we have concluded that the unqualified language of § 18-3-611(b) makes the third interpretation most persuasive, it was not clear that this was the only acceptable interpretation at the time plaintiff was reassigned."). Therefore, even though we concluded that the state statute did create a property right, we held that the "plaintiff has failed to show that the asserted property right was clearly established" because there were other reasonable ways to interpret the statute. Id.

Unlike the ambiguous statute in Greene, we do not think that any reasonable construction of § 15-1-113 would permit the city to keep Tri-State's bid bond after the city did not accept the bid in April 2006. As noted above, the statute permits the city to retain the bid bond as damages in only two situations: when the successful bidder fails to enter the contract, and when the successful bidder fails to perform the contract. Wyo. Stat. Ann. § 15-1-113(f). Both of these conditions, however, are dependent upon the city "letting . . . the contract to" the bidder. Here, the city rejected the bid upon which the bid bond was tendered and counteroffered by proposing to value engineer the project. See Panhandle Eastern Pipe Line Co., 637 P.2d at 1023. The provisions in the statute permitting the city to retain the bond from the initial bid unambiguously do not apply in this situation. Therefore, we agree with the district court that Appellants are not entitled to qualified immunity because they violated Tri-State's clearly established due process rights.

Before concluding, we pause to make one final observation regarding the inefficiency of appeals such as these. Here, the district court has resolved the underlying

12

merits question regarding the return of the bond—in fact, the city has already refunded the bond—but has not yet entered final judgment because issues of punitive damages and attorneys' fees remain to be decided. To be sure, Appellants have the right to appeal the denial of summary judgment on qualified immunity grounds prior to entry of final judgment. See Bowling, 584 F.3d at 964. Whether Appellants should exercise that right when the only remaining issues are peripheral issues such as punitive damages and attorney's fees, as opposed to simply concluding the matter in the district court and appealing the final order, is another matter. Protracted litigation in the form of piecemeal appeals consumes considerable amounts of both the court's and the parties' time and resources, with little practical benefit. Attorneys should take such considerations into account when weighing whether the benefits of an immediate appeal outweigh the significant costs.

## III.    Conclusion

Therefore, we AFFIRM the district court's denial of Appellants' motion for summary judgment on the ground of qualified immunity.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

13